James S. Brown (SBN 135810)
Eden E. Anderson (SBN 233464)
**DUANE MORRIS LLP**
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001
E-mail:  jamesbrown@duanemorris.com
            eeanderson@duanemorris.com

Attorneys for Defendant
UNIVERSITY OF SAN FRANCISCO
WELFARE BENEFIT PLAN

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.G., | Case No.:   3:23-cv-00299 |
| Plaintiff, | **DEFENDANT UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN'S NOTICE OF REMOVAL TO FEDERAL COURT** |
| v. | |
| UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN, | |
| Defendant. | Complaint Filed: August 1, 2022 |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant University of San Francisco Welfare Benefit Plan hereby removes the above-referenced action from the California Superior Court, County of San Francisco, pursuant to 28 U.S.C. §§ 1441 and 1446, based on federal question jurisdiction (28 U.S.C. § 1331).  The removal is proper for the following reasons:

1

## BACKGROUND

2       1.    On August 1, 2022, an action was commenced in the Superior Court of

3   the State of California, County of San Francisco, entitled *J.G. v. Anthem Blue Cross*

4   *Life and Health Insurance Company*; *University of San Francisco Welfare Benefit*

5   *Plan*; Case No. CGC-22-601043 ("State Court Action").  The Complaint alleged state

6   law causes of action for breach of contract, breach of the implied covenant of good

7   faith and fair dealing, and negligence.  A true and correct copy of the Complaint is

8   attached hereto as **Exhibit A.**

9       2.    On September 29, 2022, a First Amended Complaint ("FAC") was filed.

10  The FAC names the University of San Francisco Welfare Benefit Plan (the "Plan") as

11  the sole defendant, and alleges claims for: (1) denial of plan benefits under ERISA, 29

12  U.S.C. §§ 1132(a), (e), (f), and (g); and (2) equitable relief pursuant to ERISA, 29

13  U.S.C. § 1132(a)(1)(B).

14      3.    On October 20, 2022, Plaintiff filed with the Superior Court a Proof of

15  Service of Summons purporting to have effected service of the FAC and other

16  documents on the Plan.  The Proof of Service indicates that personal service was

17  effected on "Julian Martinson – Agent for Service of Process" on October 18, 2022.

18  However, Plan documents specify that service shall be made on the University of San

19  Francisco, whose registered agent for service of process is Donna Davis.  Thus,

20  service was ineffective.

21      4.    On December 21, 2022, the Plan signed a Notice of Acknowledgement of

22  Receipt of Service ("NAR").  The NAR acknowledged receipt of service of the

23  following documents: Civil Cover Sheet, Notice to the Plaintiff, ADR Packet, FAC,

24  Amended Summons, Substitution of Attorney, Proof of Service, Order Continuing

25  Case Management Conference, and Proof of Service of Order Continuing CMC, and

26  Statement of Damages.  A true and correct copy of the NAR, and all the documents

27  served with it, are attached hereto as **Exhibit B**.

28

1       5.    On January 19, 2023, the Plan filed its Answer in San Francisco County

2   Superior Court.  A true and correct copy of the filed Answer is attached hereto as

3   **Exhibit C**.

4       6.    Together, Exhibits A-C comprise all process, pleadings and orders served

5   to date in the State Court Action.

6   

**TIMELINESS OF REMOVAL**

7       7.    This Notice of Removal is timely because it is being filed within thirty

8   (30) days of the December 21, 2022 NAR and because the prior attempt at service was

9   ineffective.  28 U.S.C. 1446(b).

10  

**FEDERAL QUESTION JURISDICTION**

11      8.    This action is proper for removal to this Court on the ground that it is a

12  civil action of which this Court has original jurisdiction under 28 U.S.C. § 1331.

13      9.    Any civil action commenced in state court is removable if it might have

14  been originally brought in federal court.  See 28 U.S.C. § 1441; *Exxon Mobil Corp. v.*

15  *Allapattach Servs., Inc.,* 545 U.S. 546, 563-64 (2005) ("district court has original

16  jurisdiction of a civil action for purposes of section 1441(a) as long as it has original

17  jurisdiction over a subset of claims constituting the action").

18      10.    The action may be removed to this Court by the Plan under 28 U.S.C. §

19  1441(a) because it arises under a federal statute, the Employee Retirement Income

20  Security Act, 29 U.S.C. § 1001, *et seq*.  Both Plaintiff's First and Second Causes of

21  Action allege claims under ERISA.  Thus, Plaintiff has expressly relied on a federal

22  statute.

23      11.    Consequently, the action is removable based on federal question

24  jurisdiction.  See *Vaden v. Discover Bank*, 556 U.S. 49, 59-60 (2009) (a suit arises

25  under federal law when "the plaintiff's statement of his own cause of action shows

26  that it is based upon [federal law]"); *Abada v. Charles Schwab & Co.*, 300 F.3d 1112,

27  1118 (9th Cir. 2002) ("The presence or absence of federal-question jurisdiction is

28  governed by the 'well-pleaded complaint rule,' which provides that federal

1  jurisdiction exists only when a federal question is presented on the face of the

2  plaintiff's well-pleaded complaint.").

3                                    **VENUE**

4         12.    Removal to this Court is proper pursuant to 28 U.S.C. §§ 1391(b) and

5  1441(a) because the state court action was filed in San Francisco County.

6                            **NOTICE OF REMOVAL**

7         13.    Notice of this removal will promptly be served on Plaintiff and the Clerk

8  of the Superior Court of the State of California in and for the County of San

9  Francisco.

10                          **PRAYER FOR REMOVAL**

11        14.    WHEREFORE, the Plan prays that the State Court Action be removed to

12  the United States District Court for the Northern District of California.

13
    Dated:  January 20, 2023            **DUANE MORRIS LLP**
14

15                                      By:*/s/ Eden E. Anderson*
                                        James S. Brown (SBN 135810)
16                                      Eden E. Anderson (SBN 233464)

17                                      Attorneys for Defendant
                                        UNIVERSITY OF SAN FRANCISCO
18                                      WELFARE BENEFIT PLAN

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
**DL LAW GROUP**
345 Franklin St.
San Francisco, CA 94102
Telephone: (415) 678-5050
Facsimile: (415) 358-8484

Attorneys for Plaintiff,
J.G.

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**08/01/2022**
**Clerk of the Court**
BY: JEFFREY FLORES
Deputy Clerk

## IN THE SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

**CGC-22-601043**

| | |
|---|---|
| J.G., | Case No. |
| Plaintiff, | **COMPLAINT FOR BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE; JURY TRIAL DEMANDED** |
| v. | |
| ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY; UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN; and DOES 1 through 10, | |
| Defendants. | |

## I.    INTRODUCTION

Plaintiff J.G. hereby requests a jury trial on all issues in this action against Defendant ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY ("ANTHEM"); UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN; and DOES 1 through 10.

Plaintiff J.G. alleges as follows:

//

//

//

//

**COMPLAINT**                                                                                    **CASE NO.**

## II.     PARTIES

1.      Plaintiff J.G. is, and all relevant times, was a resident of California.

2.      Plaintiff J.G. was at all relevant times, K.G.'s parent and was paying for his medical insurance and care.

3.      J.G. was the individual responsible for his and K.G.'s health coverage, as that term ("responsible individual") is defined by the Department of the Treasury, Internal Revenue Service.

4.      J.G. was a member of the subject health insurance benefits plan. K.G. was a member of the subject health insurance benefits plan by virtue of J.G.'s employment at USF. The plan, or policy, is referred to as the University of San Francisco Welfare Benefit Plan ("the Plan"), established by the University of San Francisco, a Jesuit University.

5.      Defendant ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY ("ANTHEM") is a health insurance company authorized to transact and currently transacting the business of insurance in the State of California, including the County of San Francisco.

6.      Defendant UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN ("the Plan") is a group health care plan established by the University of San Francisco to provide healthcare plans for employees and eligible family members of University of San Francisco employees.

7.      The University of San Francisco ("USF") is a Jesuit Catholic university. At the university's founding by the Jesuits in 1855, and in all subsequent years to the present day, the USF President has been an ordained Jesuit Catholic priest, with responsibilities to report to his Catholic Church and Jesuit superiors, as well as to the university's Board of Trustees, to which his leadership is held accountable.

8.      The USF website affirms that "USF conducts weekly student mass on-campus, at St. Ignatius Church, liturgies throughout the school year, and offers intimate worship services in its residence halls." "Our faith formation programs offer opportunities for you to explore your spiritual potential. Resident ministers connect students to our wide variety of programs and social justice opportunities." In addition, the USF website states that "[o]ur theology and religious studies requirement [is] an essential part of USF's core curriculum."

**COMPLAINT**                                                                                                    **CASE NO.**

9.      USF is a tax-exempt organization under title 26, section 501(c)(3) of the internal revenue code.  The USF 990 tax form states: "Our mission is to promote learning in the Jesuit Catholic tradition."

10.      The true names or capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 10, inclusive, are unknown to Plaintiff who therefore sue said defendants by such fictitious names. Plaintiff is informed and believes, and on such information and belief alleges, that each of the defendants sued herein as a DOE is legally responsible in some manner for the events and happenings referred to herein, and will ask leave of this court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when the same become known to Plaintiff.

11.      At all times relevant, the DOE defendants, and each of them, were, subject to the discovery of new facts, the agents and employees of the remaining defendants, and were at all times acting within the purpose and scope of said agency and employment, and each defendant has ratified and approved the acts of its agent.

### III.    FACTS

12.      Plaintiff incorporates by refence each and every paragraph of this Complaint as though set forth in full in this cause of action.

13.      Plaintiff is employed by USF.

14.      At all relevant times, Plaintiff performed all terms, conditions and obligations required of him under the Plan.

15.      At all relevant times, K.G. was insured under the University of San Francisco Welfare Benefit Plan ("the Plan"), a health care service plan administered by Defendant ANTHEM.

16.      At all times relevant, the Plan provided behavioral and mental health benefits that were administered by Defendant ANTHEM.

17.      At all times herein mentioned, the Plan was in full force and effect.

18.      ANTHEM and USF executed a contract, sometimes referred to as an administrative service agreement, to provide health care benefits to Plaintiff and his dependent(s). At all times relevant Plaintiff and his dependent(s) were part of a class of insureds that both ANTHEM and USF intended to benefit under their administrative services agreement.  Plaintiff and his dependent(s) were intended

beneficiaries of both the health care service plan provided and administered by USF and ANTHEM as well as the administrative services agreement.

19.     The intent of the administrative service agreement, its material terms, and legal effect thereof were to provide health care benefits and payment for medically necessary health treatment received by Plaintiff and his dependent(s) and similarly situated members and beneficiaries of the USF Plan. In particular, the intent, material terms, and legal effect of the administrative services agreement were to ensure that USF employees and Plan members and beneficiaries receive medically necessary health care.

20.     As administrator of the USF Plan, USF relinquished decision-making control to ANTHEM for Plaintiff and his dependent(s)' intended benefit.

21.     Plaintiff and his dependent(s) relied on ANTHEM's expertise to provide coverage for medically necessary health care services, such as are at issue herein.  Plaintiff and his dependent(s) could have chosen a different health insurer, but chose ANTHEM for reasons including, but not limited to, Plaintiff and his dependent(s)' reasonable expectation that they would be treated fairly and honestly and in accordance with the generally accepted professional standards of the health care industry.

22.     ANTHEM had the power, authority and duty to act toward Plaintiff and his dependent(s) in a fashion that did not and would not harm Plaintiff and his dependent(s). USF and the Plan had the same duty, as well as a duty to supervise and oversee ANTHEM and prevent it from harming Plaintiff and his dependent(s).

23.     ANTHEM, at all times relevant, served as the claims administrator for the USF Plan. ANTHEM was vested with authority to act as claims administrator by USF and the Plan.  In its capacity as claims administrator, ANTHEM, *inter alia*, made determinations whether to pay or deny health claims, communicated claims decisions to Plan participants and beneficiaries, and communicated with Plan participants and beneficiaries regarding claim appeal review procedures and legal rights under the Plan. As such, ANTHEM was acting as the agent of USF and the USF Plan with respect to its dealings with Plaintiff and his dependent(s). All the defendants were joint-venturers, co-conspirators, and joint tortfeasors with one another.  They ratified, encouraged, and rewarded each other for the conduct alleged herein.

24.     It is industry practice for so-called self-insured plans such as herein to procure and purchase what is referred to as stop-loss insurance, to protect from excess, and potentially financially injurious, levels of claims.  Upon information and belief, the plan herein purchased stop-loss insurance, and the plan is therefore not a self-insured, but is rather a partially-insured plan.

25.     Under the terms and conditions of the Plan, to qualify for residential treatment relating to psychiatric disorder treatment, the covered individual's symptoms or condition must meet the criteria for medical necessity.

26.     Medically necessary services are defined under the Plan as services that are

> 1. Appropriate and necessary for the diagnosis or treatment of the medical condition;
> 2. Clinically appropriate in terms of type, frequency, extent, site and duration and considered effective for the patient's illness, injury or disease
> 3. Provided for the diagnosis or direct care and treatment of the medical condition;
> 4. Within standards of good medical practice within the organized medical community;
> 5. Not primarily for your convenience, or for the convenience of your *physician* or another provider;
> 6. Not more costly than an equivalent service, including the same service in an alternative setting, or sequence of services that is medically appropriate and is likely to produce equivalent therapeutic or diagnostic results in regard to the diagnosis or treatment of the patient's illness, injury, or condition; and
> 7. The most appropriate procedure, supply, equipment or service which can safely be provided. The most appropriate procedure, supply, equipment or service must satisfy the following requirements:
>> a. There must be valid scientific evidence demonstrating that the expected health benefits from the procedure, supply, equipment or service are clinically significant and produce a greater likelihood of benefit, without a disproportionately greater risk of harm or complications, for you with the particular medical condition being treated than other possible alternatives; and
>> b. Generally accepted forms of treatment that are less invasive have been tried and found to be ineffective or are otherwise unsuitable.

27.     The Plan guarantees coverage for inpatient and outpatient treatment for mental health conditions.

COMPLAINT                                                                                     CASE NO.

28.     California's Mental Health Parity Act, Health & Safety Code §1374.72, and Insurance Code §10144.5 specifically require that health care plans provide medically necessary diagnosis, care and treatment for the treatment of specified mental illnesses at a level equal to the provision of benefits for physical illnesses.

29.     K.G. has a long history of mental illness and serious emotional disturbances, which at all relevant times, only worsened and became more severe, to the point where, as set forth below, he was a threat to his own life.

30.     At all times relevant, K.G. suffered from, *inter alia*, autism spectrum disorder, generalized anxiety disorder, major depressive disorder, and neurodevelopmental disorders.

31.     From an early age, K.G. began displaying signs of debilitating anxiety and autism spectrum disorder. He struggled with fine motor skills and social skills, and when he became overwhelmed, he would shut down/isolate or avoid/withdraw.

32.     At approximately the age of seven, K.G. was diagnosed with Asperger's Syndrome/High Functioning Autism.

33.     By eighth grade, K.G.'s anxiety and depression had evolved to the point that he had difficulty attending school and completing schoolwork.

34.     In response to K.G.'s declining mental health, he was admitted to Aspiro Wilderness Therapy and then Daniels Academy. While he showed some improvement in functionality in a structured environment, he still demonstrated troublesome and potentially dangerous mental health issues.

35.     When K.G. left Daniels Academy and returned home, he declined over a course of two years. He mainly isolated, had difficulty attending school and completing assignments, and, as a result, did not graduate with his high school class.

36.     At the end of his 12th grade year, K.G. had an outburst at home that included suicidal threats and led to a 17-day hospitalization at Stanford Hospital.

37.     Following the hospitalization, K.G. was admitted to Bridge House where he remained in treatment from May 8, 2019, to August 21, 2019. At Bridge House, K.G.'s depression and anxiety were managed well, and he no longer reported suicidal thoughts.

COMPLAINT                                                                                              CASE NO.

38.     Following his stay at Bridge House, K.G. transitioned to Echo Springs Utah Transitional Program ("Echo Springs").

39.     While at Echo Springs, K.G. was responsible for keeping track of his medication and refilling his pill boxes. However, he became negligent in this task, often failing to take the medications that helped stabilize him.

40.     K.G. had been in treatment at Echo Springs for approximately a year when he made a significant suicide attempt. On June 27, 2020, K.G. was found by police in a tree with one end of a rope tied to a branch and the other in a noose which was around his neck.

41.     As a result of his failed treatment at a transitional lower level of care, K.G. was re-admitted to Bridge House on July 14, 2020.

42.     By August 2020, K.G. was still expressing suicidal ideations, and in September 2020, Bridge House staff discovered a homemade noose in K.G.'s possession.

43.     At all relevant times, K.G.'s treatment at Bridge House was medically necessary, based upon the reasoned medical opinions of K.G.'s numerous mental health providers.

44.     Plaintiff filed a claim with ANTHEM to cover the cost of K.G.'s mental health treatment and care at Bridge House, as was required under the terms and conditions of the Policy.

45.     ANTHEM approved Plaintiff's claims for the first two weeks, then subsequently denied claims for the remainder of K.G.'s treatment at Bridge House because the facility was not accredited by the Plan's chosen accrediting agencies.

46.     In its denial letters, ANTHEM also stated that Bridge House was an outdoor behavioral health program and/or a wilderness program.

47.     According to the Plan, there is no requirement for accreditation for any type of skilled nursing facility: "Skilled nursing facility is an institution that provides continuous skilled nursing services.  It must be licensed according to state and local laws and be recognized as a skilled nursing facility under Medicare."

48.     Bridge House is licensed by the State of Utah for Residential Treatment and is neither an outdoor behavioral health program nor a wilderness program.

COMPLAINT                                                                                          CASE NO.

49.     The Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA") and California Mental Health Parity Act require that any treatment limitation on mental health treatment be no more restrictive than the limitation for medical or surgical health within its category/treatment level.

50.     Requiring accreditation of a residential treatment facility but not a similar facility for medical or surgical treatment represents a non-quantitative treatment limitation, violating the Parity Act.

51.     Plaintiff appealed ANTHEM's denial.

52.     ANTHEM denied Plaintiff's appeal for K.G.'s treatment at Bridge House.

53.     At the recommendation of his treating providers, following his stay at Bridge House, K.G. was admitted to Innercept Residential Treatment Center ("Innercept") on October 20, 2020.

54.     ANTHEM once again denied claims for K.G.'s treatment at Innercept on the grounds that the facility was not accredited by the Plan's chosen accrediting agencies.

55.     Innercept subsequently attained accreditation by The Joint Commission on March 20, 2021. Plaintiff appealed ANTHEM's denial.

56.     ANTHEM denied Plaintiff's appeal for K.G.'s treatment at Bridge House and issued a new and wholly pretextual denial based on the false assertion that K.G.'s treatment was not medically necessary.

57.     Plaintiff timely appealed ANTHEM's denial.

58.     ANTHEM denied Plaintiff's appeal.

59.     Due to the severity and pervasiveness of K.G.'s conditions, he continued to suffer setbacks in treatment. He overdosed on medications, was taken to the emergency room, and was housed in the stabilization unit at Innercept.

60.     Plaintiff filed a Level Two appeal for K.G.'s treatment at both Bridge House and Innercept.

61.     THE PLAN adopted and ratified ANTHEM's denials of Plaintiff's claims and appeals for K.G.'s treatment at Bridge House and Innercept, and refused to pay for K.G.'s treatment.

62.     Not only was DEFENDANTS' denial unreasonable in light of the overwhelming medical necessity for K.G.'s ongoing care at a residential treatment center, but the denial also violated the

COMPLAINT                                                                                                          CASE NO.

California Mental Health Parity Act, as well as the MHPAEA, which alone provided a basis for approving all of the care for K.G. that is at issue herein.

63.     Plaintiff has exhausted all administrative remedies.

## IV.     CALIFORNIA'S PARITY ACT

64.     The Policy at issue in this action is governed by the California Parity Act.

65.     The Parity Act, as set forth in the version effective at all relevant times herein under Health & Safety Code §1374.72 (as amended January 1, 2003) and Insurance Code § 10144.5 (as amended January 1, 2000), states, inter alia, that "every health care service provider [and every policy of disability insurance] ... that provides hospital, medical, or surgical coverage shall provide coverage for the diagnosis and medically necessary treatment of severe mental illnesses of a person of any age ... under the same terms and conditions applied to other medical conditions…" This statute is hereinafter referred to as the California "Parity Law."

66.     The mental health care services mandated under the Parity Law "shall, at a minimum, include crisis intervention and stabilization, psychiatric inpatient hospital services, including voluntary psychiatric inpatient services, and services from licensed mental health providers including, but not limited to, psychiatrists and psychologists." 28 CCR§ 1300.74.72.

67.     Under the Parity Law, health insurance plans "shall" offer mental health benefits that include, but are not limited to "( 1 ) Outpatient services [,] (2) Inpatient hospital services,[,] (3) Partial hospital services." Health & Safety Code§ 1374.72(b); Ins. Code § 10144.5(b).

68.      As a result of the actions of Defendants, and each of them, Plaintiff has been improperly denied health insurance benefits together with interest thereon, and has suffered further and severe economic hardship.

69.     Defendants' conduct has been in violation of the California Parity Law and the MHPAEA.

70.     By requiring accreditation of a residential treatment facility but not a similar facility for medical or surgical treatment represents a non-quantitative treatment limitation, Anthem's denials violated the Federal MHPAEA.

COMPLAINT                                                                                    CASE NO.

71.     By requiring accreditation of a residential treatment facility but not a similar facility for medical or surgical treatment represents a non-quantitative treatment limitation, Anthem's denials violated California's Parity Act.

## V.     FIRST CAUSE OF ACTION
### (Breach of Contract against UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN; and DOES 1-10)

72.     Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in this cause of action.

73.     At all relevant times K.G. was a beneficiary in the USF Plan, administered by ANTHEM.  At all times relevant, the USF Plan provided health insurance benefits that were administered by ANTHEM.

74.     At all times relevant, Plaintiff performed all terms, conditions and obligations required of him under the Plan.

75.     At all times relevant, the Plan was in full force and effect.

76.     At all relevant times, K.G.'s treatment at Bridge House and Innercept was medically necessary, based upon the reasoned medical opinions of K.G.'s numerous mental health providers.

77.     At all times relevant, Bridge House and Innercept were licensed to provide psychiatric treatment of mental health condition or substance abuse according to state and local laws (in Utah and Idaho, respectively).

78.     In denying the mental health claims as set forth above, DEFENDANTS have breached and continued to breach the terms of the health plan that is the subject of this litigation.

79.     As a direct and proximate result of DEFENDANTS' claim denial, Plaintiff was forced to pay substantial sums of money, out-of-pocket, in excess of this court's jurisdiction, for K.G.'s treatment at Bridge House and Innercept.

80.     As a direct and proximate result, of DEFENDANTS' claim denial, Plaintiff has been damaged in an amount equal to the mental health benefits owing, plus interest, that amount increasing monthly, as a result of the conduct alleged herein.

COMPLAINT                                                                                          CASE NO.

81.     In denying the mental health claims set forth above, Defendants UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN, and DOES 1 through 10, and each of them, have breached and continue to breach the terms of the health plan contract that is the subject of this litigation.

## VI.     SECOND CAUSE OF ACTION
### (Breach of Contract against ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY; UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN; and DOES 1-10)

82.     Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in this cause of action.

83.     Plaintiff is informed and believes, and thereon alleges, that USF and/or Defendant the Plan entered into a written contract(s) with ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY to perform claims administration, utilization review, and provide a network of health care providers, in connection with the Plan.

84.     Plaintiff is informed and believes, and thereon alleges, that Plaintiff and his dependent(s) were intended third-party beneficiaries of that contract(s) entered into by and between ANTHEM on the one hand and USF and the Plan on the other hand.

85.     The intent of the contract(s), its material terms, and legal effect thereof was to provide health care benefits and payment for medically necessary health treatment received by K.G. and similarly situated members and beneficiaries of the USF Plan.

86.     Plaintiff is informed and believes, and thereon alleges, that Defendant ANTHEM breached the written contract by, among other things, failing to authorize urgent and medically necessary mental health care in response to claims submitted by Plaintiff and/or his authorized representatives.

87.     As a direct and proximate result of Defendants' breaches of contract, plaintiff has suffered damages, including, without limitation, loss of benefits, loss of interest, attorney fees, economic damages, and noneconomic damages according to proof at trial.

88.     WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

//

COMPLAINT                                                                                                    CASE NO.

# VII.   THIRD CAUSE OF ACTION
## (Breach of the Covenant of Good Faith and Fair Dealing (Insurance Bad Faith)
## Against ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY,
## UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN, and DOES 1 through 10)

89.     Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in this cause of action.

90.     At all times herein relevant, DEFENDANTS agreed to act in good faith and deal fairly with Plaintiff J.G.. DEFENDANTS thereby assumed a special relationship with fiduciary-like obligations to Plaintiff and agreed to abide by said duties. Nevertheless, DEFENDANTS refused and failed to act in good faith and deal fairly with Plaintiff, and breached said obligations, as is set forth more particularly in this Complaint.

91.     In the absence of a reasonable basis for doing so, and with full knowledge and/or conscious disregard of the consequences, DEFENDANTS failed and refused to provide Plaintiff the benefits promised under the Policy, under the laws of California.

92.     DEFENDANTS engaged and continue to engage in conduct to further their own economic interest and in violation of their contractual and fiduciary obligations to Plaintiff, including but not limited to:

    a.   Unreasonably denying the benefits of the Plan;

    b.   Misrepresenting pertinent policy provisions and coverages at issue;

    c.   Misrepresenting that the Policy is governed by ERISA when in fact it is church plan, as that term is defined under ERISA;

    d.   Denying benefits based on a requirement for accreditation that does not apply to analogous medical/surgical treatment;

    e.   Denying benefits based on a requirement for accreditation, despite the fact that Innercept obtained accreditation while K.G. was in treatment, with such accreditation being significantly delayed due to the COVID-19 pandemic;

    f.   Misrepresenting medical evidence;

    g.   Misrepresenting and or disregarding the unanimous medical assessments of K.G.'s treating physicians and therapists;

    h.   Denying benefits based on insufficient, inadequate, and biased medical analyses;

i.   Failing to provide a reasoned evidence-based rationale for denying benefits in the context of overwhelming evidence of medical necessity provided by medical health professionals responsible for K.G.s mental health treatment;

j.   Failing to place the financial interests of its insureds on an equal par with Defendant's own financial interests;

k.   Failing to objectively evaluate Plaintiff's claim and attempting to find phony reasons not to pay their claim;

l.   Failing to conduct a full and fair investigation. This included a one-sided claims handling procedure that was biased against approving medically necessary claims for care at residential treatment facilities;

m.  Conducting a medical analysis of the claim by medical personnel who sought to provide a pretext for denying Plaintiff's claim, instead of looking for reasons to pay the claim and instead of crediting the wealth of medical information establishing medical necessity, as defined under the terms and conditions of the Policy;

n.   Failing to consider the requirements of the California Mental Health Parity Act, as well as the Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA"), which alone provided a basis for overturning ANTHEM's claim denial(s) at issue herein;

o.   Shifting the burden of investigation onto its insureds; and

p.   Engaging in an unlawful pattern of practice for denying medically necessary residential treatment in order to save money and increase profits.

93.     In doing the acts listed above, DEFENDANTS breached the covenant of good faith and fair dealing and engaged in unfair claim settlement practices.

94.     DEFENDANTS continue to engage in the aforementioned acts and said conduct and bad faith constitutes a continuing tort and continuing bad faith to Plaintiff, causing continued damage as described herein beyond the date of the filing of this action.

95.     As a direct and proximate result of the aforementioned conduct of DEFENDANTS, Plaintiff has been damaged in an amount in excess of the jurisdiction of this Court, to be determined at trial.

COMPLAINT                                                                                          CASE NO.

96.     As a further direct and proximate result of the aforementioned conduct of DEFENDANTS, Plaintiff suffered financial, mental and emotional distress, including, but not limited to, fear, aggravation, depression, humiliation and anxiety, and have thereby incurred general damages in a sum in excess of the jurisdiction of this court to be determined according to proof at trial.

97.     As a further, direct and proximate result of the aforementioned conduct of DEFENDANTS, Plaintiff has been obliged to expend or incur liability for costs of suit, attorneys' fees and related expenses in an amount not yet fully ascertained, but which will be submitted at the time of trial.

98.     As a further, direct and proximate result of the aforementioned conduct of DEFENDANTS, Plaintiff has suffered other special damages in amounts according to proof at the time of trial which include, but are not limited to, Plaintiff's inability to replace the Plan under the terms and conditions represented to him.

99.     In doing the acts set forth above, DEFENDANTS acted fraudulently, maliciously, oppressively, and in conscious disregard of Plaintiff's rights in a despicable fashion. Plaintiff is therefore entitled to punitive damages in a sum sufficient to punish and deter Defendants so that such conduct will not take place again.

## VIII.     FOURTH CAUSE OF ACTION
### (Negligence against UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN; and DOES 1-10)

100.    Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in this cause of action.

101.    As the provider of health insurance to individuals such as Plaintiff and his dependent(s), Defendant the USF Plan had a duty to ensure that claims, such as are at issue herein, are timely approved and paid. Further, the USF Plan had a duty to ensure that insureds, including but not limited to Plaintiff and his dependent(s), would not have to resort to legal action and incur attorneys' fees in order for medically necessary treatment and care to be covered. Further, The USF Plan had a duty to properly investigate and otherwise vet any entity that it chose to administer its health plan, make claims decisions, including but not limited to

14

**COMPLAINT**                                                              **CASE NO.**

Plaintiff and his dependent(s), to ensure that medically necessary claims such as are at issue herein are properly and timely administered, adjudicated, and paid, and to ensure that the USF Plan does not violate California or Federal law, specifically including the California Parity Law or the MHPAEA.

102.     Plaintiff and his son, K.G., were plan members and beneficiaries when Defendants denied K.G.'s claims for benefits. As such, Defendant the USF Plan owed a duty of care to Plaintiff to ensure medically necessary claims are properly, fairly, timely, and honestly adjudicated.

103.     The USF Plan breached the aforesaid duties of care when it chose to contract with Defendant ANTHEM to administer health care benefits.

104.     Defendant also breached its duty of care to Plaintiff by negligently assigning health claims to Defendant ANTHEM, an entity that has a known pattern and practice of improperly denying medically necessary claims.

105.     As a direct and proximate cause of the Defendant's negligence, Plaintiff suffered damages, including without limitation, financial, mental and emotional distress, including, but not limited to, fear, aggravation, depression, humiliation and anxiety, and has thereby incurred damages in a sum in excess of the jurisdiction of this court to be determined according to proof at trial.

106.     As a further, direct and proximate result of the aforementioned conduct of Defendant, Plaintiff has been obliged to expend or incur liability for costs of suit, attorneys' fees and related expenses in an amount not yet fully ascertained, but which will be submitted at the time of trial.

107.     WHEREFORE, Plaintiffs pray for judgment against Defendant, as hereinafter set forth.

//

//

//

COMPLAINT                                                                                              CASE NO.

## IX.    FIFTH CAUSE OF ACTION
**(Negligence against ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY; and DOES 1-10)**

108.    Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in this cause of action.

109.    As the administrator of health insurance to individuals such as Plaintiff, Defendant ANTHEM had a duty to exercise due care to protect insureds from physical and mental health injuries in making benefit determinations.  Further, ANTHEM had a duty to conduct a reasonable, thorough, fair, timely, honest and comprehensive investigation of health claims, including Plaintiff's and his dependents'. Further, ANTHEM had a duty to ensure that insureds, including but not limited to Plaintiff, would not have to resort to legal action and incur attorneys' fees in order for medically necessary treatment and care to be covered.  Further, ANTHEM had a duty to accurately inform insureds, including Plaintiff, of their rights, duties, and obligations under the contract of insurance, including all claim submission, review, appeal, and legal remedies.

110.    Defendant breached the aforesaid duties of care when it placed its own financial interests above those of the insureds by denying K.G.'s claims without a reasonable basis for doing so.  Defendant further breached the aforesaid duties of care by failing to conduct a reasonable, thorough, fair, timely, honest, and comprehensive investigation of K.G.'s claims for health benefits at issue herein.

111.    As a direct and proximate result of ANTHEM's negligence, Plaintiff suffered financial, mental and emotional distress, including, but not limited to, fear, aggravation, depression, humiliation and anxiety, and thereby incurred damages in a sum in excess of the jurisdiction of this court to be determined according to proof at trial.

112.    As a further, direct and proximate result of the aforementioned conduct of Defendant, Plaintiff has suffered economic and non-economic damages in excess of the jurisdictional minimum of this Court, including without limitation, the loss of Decedent, costs of suit, attorneys' fees and related expenses all in amounts not yet fully ascertained, but which will be submitted at the time of trial.

113.     WHEREFORE, Plaintiff prays for judgment against Defendant, as hereinafter set forth.

## X.     PRAYER FOR RELIEF

### AS TO ALL CAUSES OF ACTION

**WHEREFORE,** Plaintiff prays that the Court grant the following relief as against ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN; and DOES 1 through 10:

114.     General damages for the failure to provide the promised benefits under the subject contract of insurance in a sum to be determined at the time of trial, and a return of the payments which Plaintiff paid to Bridge House and Innercept;

115.     General damages for mental and emotional distress and other incidental damages in a sum to be determined at trial.

116.     Punitive and exemplary damages;

117.     Treble damages as allowed under Cal. Civil Code §3345;

118.     Special damages in an amount according to proof;

119.     For costs of suit herein incurred;

120.     For reasonable attorneys' fees; and

121.     For such other and further relief as the Court deems just and proper.


### JURY TRIAL IS HEREBY DEMANDED


Dated: August 1, 2022                    Respectfully submitted,

                                         **DL LAW GROUP**


                                         By:_____
                                         David M. Lilienstein
                                         Katie J. Spielman
                                         Attorneys for Plaintiff, J.G.

COMPLAINT                                                          CASE NO.

# EXHIBIT B

**POS-015**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:       STATE BAR NO: 199634<br>NAME: Elizabeth K. Green<br>FIRM NAME: Kantor & Kantor, LLP<br>STREET ADDRESS: 19839 Nordhoff Street<br>CITY: Northridge      STATE: CA    ZIP CODE: 91324<br>TELEPHONE NO.: 818-886-2525    FAX NO.: 818-350-6272<br>E-MAIL ADDRESS: egreen@kantorlaw.net<br>ATTORNEY FOR (Name): Plaintiff, J.G. | **FOR COURT USE ONLY**<br><br>**ELECTRONICALLY**<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br>**12/22/2022**<br>**Clerk of the Court**<br>BY: YOLANDA TABO-RAMIREZ<br>Deputy Clerk |

| | |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco<br>STREET ADDRESS: 400 McAllister Street<br>MAILING ADDRESS: 400 McAllister Street<br>CITY AND ZIP CODE:    San Francisco, CA 94102-3680<br>BRANCH NAME: Civic Center Courthouse | |

| | |
|---|---|
| Plaintiff/Petitioner:  J.G.<br>Defendant/Respondent:  University of San Francisco Welfare Benefit Plan | |

| | |
|---|---|
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>CGC-22-601043 |

TO *(insert name of party being served):*  Eden Anderson on behalf of Defendant University of San Francisco Welfare Benefit Plan

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing:  December 21, 2022

Elizabeth K. Green
(TYPE OR PRINT NAME)

▶ *(signature)*

(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

---

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*

1.  [x]  A copy of the summons and of the complaint.
2.  [x]  Other *(specify):*

   Civil cover sheet, Notice to the Plaintiff, ADR packet, First amended complaint, Amended summons, Substitution of attorney, Proof of service on University of San Fransisco, Order continuing CMC, Proof of service of order continuing CMC and Statement of damages

*(To be completed by recipient):*

Date this form is signed:  December 22, 2022

Eden E. Anderson o/b/o Defendant University of San Francisco Welfare Benefit Plan
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ *(signature)*

(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov

1

## PROOF OF SERVICE

I, Wendy Castillo, declare as follows:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 19839 Nordhoff Street, Northridge, CA 91324.

On December 21, 2022, I served the foregoing document described as: NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL on the interested parties in this action by serving a copy thereof in a sealed envelope addressed as follows:

Eden E. Anderson                           Attorneys for Defendant
Special Counsel                            University of San Francisco Welfare Benefit
Duane Morris LLP                           Plan
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
Telephone: 415 957 3029
Facsimile: 415 707 2054


[x]     (BY MAIL) I deposited such envelope in the mail at Northridge, California. The envelope was mailed with postage thereon fully prepaid as follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Northridge, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[x]     (BY E-MAIL) I caused the above document to be sent via e-mail to the following email addresses: EEAnderson@duanemorris.com

[x]     (STATE) I declare under penalty of perjury under the Laws of the State of California that the foregoing is true and correct.

[  ]    (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on December 21, 2022, at Canoga Park, California.


*Wendy Castillo*
Wendy N. Castillo

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1
PROOF OF SERVICE

David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
**DL LAW GROUP**
345 Franklin St.
San Francisco, CA 94102
Telephone: (415) 678-5050
Facsimile: (415) 358-8484

Attorneys for Plaintiff,
J.G.

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**08/01/2022**
**Clerk of the Court**
BY: JEFFREY FLORES
Deputy Clerk

## IN THE SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

**CGC-22-601043**

| | |
|---|---|
| J.G.,<br><br>            Plaintiff,<br><br>v.<br><br>ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY; UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN; and DOES 1 through 10,<br><br>            Defendants. | Case No.<br><br>**COMPLAINT FOR BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; NEGLIGENCE; JURY TRIAL DEMANDED** |

### I.    INTRODUCTION

Plaintiff J.G. hereby requests a jury trial on all issues in this action against Defendant ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY ("ANTHEM"); UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN; and DOES 1 through 10.

Plaintiff J.G. alleges as follows:

//

//

//

//

**COMPLAINT**                                                                                   **CASE NO.**

## II.   PARTIES

1.      Plaintiff J.G. is, and all relevant times, was a resident of California.

2.      Plaintiff J.G. was at all relevant times, K.G.'s parent and was paying for his medical insurance and care.

3.      J.G. was the individual responsible for his and K.G.'s health coverage, as that term ("responsible individual") is defined by the Department of the Treasury, Internal Revenue Service.

4.      J.G. was a member of the subject health insurance benefits plan. K.G. was a member of the subject health insurance benefits plan by virtue of J.G.'s employment at USF. The plan, or policy, is referred to as the University of San Francisco Welfare Benefit Plan ("the Plan"), established by the University of San Francisco, a Jesuit University.

5.      Defendant ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY ("ANTHEM") is a health insurance company authorized to transact and currently transacting the business of insurance in the State of California, including the County of San Francisco.

6.      Defendant UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN ("the Plan") is a group health care plan established by the University of San Francisco to provide healthcare plans for employees and eligible family members of University of San Francisco employees.

7.      The University of San Francisco ("USF") is a Jesuit Catholic university. At the university's founding by the Jesuits in 1855, and in all subsequent years to the present day, the USF President has been an ordained Jesuit Catholic priest, with responsibilities to report to his Catholic Church and Jesuit superiors, as well as to the university's Board of Trustees, to which his leadership is held accountable.

8.      The USF website affirms that "USF conducts weekly student mass on-campus, at St. Ignatius Church, liturgies throughout the school year, and offers intimate worship services in its residence halls." "Our faith formation programs offer opportunities for you to explore your spiritual potential. Resident ministers connect students to our wide variety of programs and social justice opportunities." In addition, the USF website states that "[o]ur theology and religious studies requirement [is] an essential part of USF's core curriculum."

COMPLAINT                                                                                        CASE NO.

9.      USF is a tax-exempt organization under title 26, section 501(c)(3) of the internal revenue code. The USF 990 tax form states: "Our mission is to promote learning in the Jesuit Catholic tradition."

10.      The true names or capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 10, inclusive, are unknown to Plaintiff who therefore sue said defendants by such fictitious names. Plaintiff is informed and believes, and on such information and belief alleges, that each of the defendants sued herein as a DOE is legally responsible in some manner for the events and happenings referred to herein, and will ask leave of this court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when the same become known to Plaintiff.

11.      At all times relevant, the DOE defendants, and each of them, were, subject to the discovery of new facts, the agents and employees of the remaining defendants, and were at all times acting within the purpose and scope of said agency and employment, and each defendant has ratified and approved the acts of its agent.

### III.     FACTS

12.      Plaintiff incorporates by refence each and every paragraph of this Complaint as though set forth in full in this cause of action.

13.      Plaintiff is employed by USF.

14.      At all relevant times, Plaintiff performed all terms, conditions and obligations required of him under the Plan.

15.      At all relevant times, K.G. was insured under the University of San Francisco Welfare Benefit Plan ("the Plan"), a health care service plan administered by Defendant ANTHEM.

16.      At all times relevant, the Plan provided behavioral and mental health benefits that were administered by Defendant ANTHEM.

17.      At all times herein mentioned, the Plan was in full force and effect.

18.      ANTHEM and USF executed a contract, sometimes referred to as an administrative service agreement, to provide health care benefits to Plaintiff and his dependent(s). At all times relevant Plaintiff and his dependent(s) were part of a class of insureds that both ANTHEM and USF intended to benefit under their administrative services agreement.  Plaintiff and his dependent(s) were intended

COMPLAINT                                                                              CASE NO.

beneficiaries of both the health care service plan provided and administered by USF and ANTHEM as well as the administrative services agreement.

19.     The intent of the administrative service agreement, its material terms, and legal effect thereof were to provide health care benefits and payment for medically necessary health treatment received by Plaintiff and his dependent(s) and similarly situated members and beneficiaries of the USF Plan. In particular, the intent, material terms, and legal effect of the administrative services agreement were to ensure that USF employees and Plan members and beneficiaries receive medically necessary health care.

20.     As administrator of the USF Plan, USF relinquished decision-making control to ANTHEM for Plaintiff and his dependent(s)' intended benefit.

21.     Plaintiff and his dependent(s) relied on ANTHEM's expertise to provide coverage for medically necessary health care services, such as are at issue herein.  Plaintiff and his dependent(s) could have chosen a different health insurer, but chose ANTHEM for reasons including, but not limited to, Plaintiff and his dependent(s)' reasonable expectation that they would be treated fairly and honestly and in accordance with the generally accepted professional standards of the health care industry.

22.     ANTHEM had the power, authority and duty to act toward Plaintiff and his dependent(s) in a fashion that did not and would not harm Plaintiff and his dependent(s). USF and the Plan had the same duty, as well as a duty to supervise and oversee ANTHEM and prevent it from harming Plaintiff and his dependent(s).

23.     ANTHEM, at all times relevant, served as the claims administrator for the USF Plan. ANTHEM was vested with authority to act as claims administrator by USF and the Plan.  In its capacity as claims administrator, ANTHEM, *inter alia*, made determinations whether to pay or deny health claims, communicated claims decisions to Plan participants and beneficiaries, and communicated with Plan participants and beneficiaries regarding claim appeal review procedures and legal rights under the Plan. As such, ANTHEM was acting as the agent of USF and the USF Plan with respect to its dealings with Plaintiff and his dependent(s). All the defendants were joint-venturers, co-conspirators, and joint tortfeasors with one another.  They ratified, encouraged, and rewarded each other for the conduct alleged herein.

24.     It is industry practice for so-called self-insured plans such as herein to procure and purchase what is referred to as stop-loss insurance, to protect from excess, and potentially financially injurious, levels of claims.  Upon information and belief, the plan herein purchased stop-loss insurance, and the plan is therefore not a self-insured, but is rather a partially-insured plan.

25.     Under the terms and conditions of the Plan, to qualify for residential treatment relating to psychiatric disorder treatment, the covered individual's symptoms or condition must meet the criteria for medical necessity.

26.     Medically necessary services are defined under the Plan as services that are

> 1. Appropriate and necessary for the diagnosis or treatment of the medical condition;
> 2. Clinically appropriate in terms of type, frequency, extent, site and duration and considered effective for the patient's illness, injury or disease
> 3. Provided for the diagnosis or direct care and treatment of the medical condition;
> 4. Within standards of good medical practice within the organized medical community;
> 5. Not primarily for your convenience, or for the convenience of your *physician* or another provider;
> 6. Not more costly than an equivalent service, including the same service in an alternative setting, or sequence of services that is medically appropriate and is likely to produce equivalent therapeutic or diagnostic results in regard to the diagnosis or treatment of the patient's illness, injury, or condition; and
> 7. The most appropriate procedure, supply, equipment or service which can safely be provided. The most appropriate procedure, supply, equipment or service must satisfy the following requirements:
>> a. There must be valid scientific evidence demonstrating that the expected health benefits from the procedure, supply, equipment or service are clinically significant and produce a greater likelihood of benefit, without a disproportionately greater risk of harm or complications, for you with the particular medical condition being treated than other possible alternatives; and
>> b. Generally accepted forms of treatment that are less invasive have been tried and found to be ineffective or are otherwise unsuitable.

27.     The Plan guarantees coverage for inpatient and outpatient treatment for mental health conditions.

COMPLAINT                                                                                           CASE NO.

28.    California's Mental Health Parity Act, Health & Safety Code §1374.72, and Insurance Code §10144.5 specifically require that health care plans provide medically necessary diagnosis, care and treatment for the treatment of specified mental illnesses at a level equal to the provision of benefits for physical illnesses.

29.    K.G. has a long history of mental illness and serious emotional disturbances, which at all relevant times, only worsened and became more severe, to the point where, as set forth below, he was a threat to his own life.

30.    At all times relevant, K.G. suffered from, *inter alia*, autism spectrum disorder, generalized anxiety disorder, major depressive disorder, and neurodevelopmental disorders.

31.    From an early age, K.G. began displaying signs of debilitating anxiety and autism spectrum disorder. He struggled with fine motor skills and social skills, and when he became overwhelmed, he would shut down/isolate or avoid/withdraw.

32.    At approximately the age of seven, K.G. was diagnosed with Asperger's Syndrome/High Functioning Autism.

33.    By eighth grade, K.G.'s anxiety and depression had evolved to the point that he had difficulty attending school and completing schoolwork.

34.    In response to K.G.'s declining mental health, he was admitted to Aspiro Wilderness Therapy and then Daniels Academy. While he showed some improvement in functionality in a structured environment, he still demonstrated troublesome and potentially dangerous mental health issues.

35.    When K.G. left Daniels Academy and returned home, he declined over a course of two years. He mainly isolated, had difficulty attending school and completing assignments, and, as a result, did not graduate with his high school class.

36.    At the end of his 12th grade year, K.G. had an outburst at home that included suicidal threats and led to a 17-day hospitalization at Stanford Hospital.

37.    Following the hospitalization, K.G. was admitted to Bridge House where he remained in treatment from May 8, 2019, to August 21, 2019. At Bridge House, K.G.'s depression and anxiety were managed well, and he no longer reported suicidal thoughts.

COMPLAINT                                                                                                    CASE NO.

38.     Following his stay at Bridge House, K.G. transitioned to Echo Springs Utah Transitional Program ("Echo Springs").

39.     While at Echo Springs, K.G. was responsible for keeping track of his medication and refilling his pill boxes. However, he became negligent in this task, often failing to take the medications that helped stabilize him.

40.     K.G. had been in treatment at Echo Springs for approximately a year when he made a significant suicide attempt. On June 27, 2020, K.G. was found by police in a tree with one end of a rope tied to a branch and the other in a noose which was around his neck.

41.     As a result of his failed treatment at a transitional lower level of care, K.G. was re-admitted to Bridge House on July 14, 2020.

42.     By August 2020, K.G. was still expressing suicidal ideations, and in September 2020, Bridge House staff discovered a homemade noose in K.G.'s possession.

43.     At all relevant times, K.G.'s treatment at Bridge House was medically necessary, based upon the reasoned medical opinions of K.G.'s numerous mental health providers.

44.     Plaintiff filed a claim with ANTHEM to cover the cost of K.G.'s mental health treatment and care at Bridge House, as was required under the terms and conditions of the Policy.

45.     ANTHEM approved Plaintiff's claims for the first two weeks, then subsequently denied claims for the remainder of K.G.'s treatment at Bridge House because the facility was not accredited by the Plan's chosen accrediting agencies.

46.     In its denial letters, ANTHEM also stated that Bridge House was an outdoor behavioral health program and/or a wilderness program.

47.     According to the Plan, there is no requirement for accreditation for any type of skilled nursing facility: "Skilled nursing facility is an institution that provides continuous skilled nursing services.  It must be licensed according to state and local laws and be recognized as a skilled nursing facility under Medicare."

48.     Bridge House is licensed by the State of Utah for Residential Treatment and is neither an outdoor behavioral health program nor a wilderness program.

**COMPLAINT**                                                                                      **CASE NO.**

49.     The Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA") and California Mental Health Parity Act require that any treatment limitation on mental health treatment be no more restrictive than the limitation for medical or surgical health within its category/treatment level.

50.     Requiring accreditation of a residential treatment facility but not a similar facility for medical or surgical treatment represents a non-quantitative treatment limitation, violating the Parity Act.

51.     Plaintiff appealed ANTHEM's denial.

52.     ANTHEM denied Plaintiff's appeal for K.G.'s treatment at Bridge House.

53.     At the recommendation of his treating providers, following his stay at Bridge House, K.G. was admitted to Innercept Residential Treatment Center ("Innercept") on October 20, 2020.

54.     ANTHEM once again denied claims for K.G.'s treatment at Innercept on the grounds that the facility was not accredited by the Plan's chosen accrediting agencies.

55.     Innercept subsequently attained accreditation by The Joint Commission on March 20, 2021. Plaintiff appealed ANTHEM's denial.

56.     ANTHEM denied Plaintiff's appeal for K.G.'s treatment at Bridge House and issued a new and wholly pretextual denial based on the false assertion that K.G.'s treatment was not medically necessary.

57.     Plaintiff timely appealed ANTHEM's denial.

58.     ANTHEM denied Plaintiff's appeal.

59.     Due to the severity and pervasiveness of K.G.'s conditions, he continued to suffer setbacks in treatment. He overdosed on medications, was taken to the emergency room, and was housed in the stabilization unit at Innercept.

60.     Plaintiff filed a Level Two appeal for K.G.'s treatment at both Bridge House and Innercept.

61.     THE PLAN adopted and ratified ANTHEM's denials of Plaintiff's claims and appeals for K.G.'s treatment at Bridge House and Innercept, and refused to pay for K.G.'s treatment.

62.     Not only was DEFENDANTS' denial unreasonable in light of the overwhelming medical necessity for K.G.'s ongoing care at a residential treatment center, but the denial also violated the

COMPLAINT                                                                                    CASE NO.

California Mental Health Parity Act, as well as the MHPAEA, which alone provided a basis for approving all of the care for K.G. that is at issue herein.

63.      Plaintiff has exhausted all administrative remedies.

### IV.    CALIFORNIA'S PARITY ACT

64.      The Policy at issue in this action is governed by the California Parity Act.

65.      The Parity Act, as set forth in the version effective at all relevant times herein under Health & Safety Code §1374.72 (as amended January 1, 2003) and Insurance Code § 10144.5 (as amended January 1, 2000), states, inter alia, that "every health care service provider [and every policy of disability insurance] ... that provides hospital, medical, or surgical coverage shall provide coverage for the diagnosis and medically necessary treatment of severe mental illnesses of a person of any age ... under the same terms and conditions applied to other medical conditions…" This statute is hereinafter referred to as the California "Parity Law."

66.      The mental health care services mandated under the Parity Law "shall, at a minimum, include crisis intervention and stabilization, psychiatric inpatient hospital services, including voluntary psychiatric inpatient services, and services from licensed mental health providers including, but not limited to, psychiatrists and psychologists." 28 CCR§ 1300.74.72.

67.      Under the Parity Law, health insurance plans "shall" offer mental health benefits that include, but are not limited to "( 1 ) Outpatient services [,] (2) Inpatient hospital services,[,] (3) Partial hospital services." Health & Safety Code§ 1374.72(b); Ins. Code § 10144.5(b).

68.       As a result of the actions of Defendants, and each of them, Plaintiff has been improperly denied health insurance benefits together with interest thereon, and has suffered further and severe economic hardship.

69.      Defendants' conduct has been in violation of the California Parity Law and the MHPAEA.

70.      By requiring accreditation of a residential treatment facility but not a similar facility for medical or surgical treatment represents a non-quantitative treatment limitation, Anthem's denials violated the Federal MHPAEA.

9

COMPLAINT                                                                          CASE NO.

71.     By requiring accreditation of a residential treatment facility but not a similar facility for medical or surgical treatment represents a non-quantitative treatment limitation, Anthem's denials violated California's Parity Act.

## V.     FIRST CAUSE OF ACTION
**(Breach of Contract against UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN; and DOES 1-10)**

72.     Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in this cause of action.

73.     At all relevant times K.G. was a beneficiary in the USF Plan, administered by ANTHEM.  At all times relevant, the USF Plan provided health insurance benefits that were administered by ANTHEM.

74.     At all times relevant, Plaintiff performed all terms, conditions and obligations required of him under the Plan.

75.     At all times relevant, the Plan was in full force and effect.

76.     At all relevant times, K.G.'s treatment at Bridge House and Innercept was medically necessary, based upon the reasoned medical opinions of K.G.'s numerous mental health providers.

77.     At all times relevant, Bridge House and Innercept were licensed to provide psychiatric treatment of mental health condition or substance abuse according to state and local laws (in Utah and Idaho, respectively).

78.     In denying the mental health claims as set forth above, DEFENDANTS have breached and continued to breach the terms of the health plan that is the subject of this litigation.

79.     As a direct and proximate result of DEFENDANTS' claim denial, Plaintiff was forced to pay substantial sums of money, out-of-pocket, in excess of this court's jurisdiction, for K.G.'s treatment at Bridge House and Innercept.

80.     As a direct and proximate result, of DEFENDANTS' claim denial, Plaintiff has been damaged in an amount equal to the mental health benefits owing, plus interest, that amount increasing monthly, as a result of the conduct alleged herein.

81.       In denying the mental health claims set forth above, Defendants UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN, and DOES 1 through 10, and each of them, have breached and continue to breach the terms of the health plan contract that is the subject of this litigation.

## VI.    SECOND CAUSE OF ACTION
**(Breach of Contract against ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY; UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN; and DOES 1-10)**

82.       Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in this cause of action.

83.       Plaintiff is informed and believes, and thereon alleges, that USF and/or Defendant the Plan entered into a written contract(s) with ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY to perform claims administration, utilization review, and provide a network of health care providers, in connection with the Plan.

84.       Plaintiff is informed and believes, and thereon alleges, that Plaintiff and his dependent(s) were intended third-party beneficiaries of that contract(s) entered into by and between ANTHEM on the one hand and USF and the Plan on the other hand.

85.       The intent of the contract(s), its material terms, and legal effect thereof was to provide health care benefits and payment for medically necessary health treatment received by K.G. and similarly situated members and beneficiaries of the USF Plan.

86.       Plaintiff is informed and believes, and thereon alleges, that Defendant ANTHEM breached the written contract by, among other things, failing to authorize urgent and medically necessary mental health care in response to claims submitted by Plaintiff and/or his authorized representatives.

87.       As a direct and proximate result of Defendants' breaches of contract, plaintiff has suffered damages, including, without limitation, loss of benefits, loss of interest, attorney fees, economic damages, and noneconomic damages according to proof at trial.

88.       WHEREFORE, Plaintiff prays for judgment against Defendants as hereinafter set forth.

//

COMPLAINT                                                                                          CASE NO.

## VII.    THIRD CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing (Insurance Bad Faith)
### Against ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY,
### UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN, and DOES 1 through 10)

89.    Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in this cause of action.

90.    At all times herein relevant, DEFENDANTS agreed to act in good faith and deal fairly with Plaintiff J.G.. DEFENDANTS thereby assumed a special relationship with fiduciary-like obligations to Plaintiff and agreed to abide by said duties. Nevertheless, DEFENDANTS refused and failed to act in good faith and deal fairly with Plaintiff, and breached said obligations, as is set forth more particularly in this Complaint.

91.    In the absence of a reasonable basis for doing so, and with full knowledge and/or conscious disregard of the consequences, DEFENDANTS failed and refused to provide Plaintiff the benefits promised under the Policy, under the laws of California.

92.    DEFENDANTS engaged and continue to engage in conduct to further their own economic interest and in violation of their contractual and fiduciary obligations to Plaintiff, including but not limited to:

a.   Unreasonably denying the benefits of the Plan;

b.   Misrepresenting pertinent policy provisions and coverages at issue;

c.   Misrepresenting that the Policy is governed by ERISA when in fact it is church plan, as that term is defined under ERISA;

d.   Denying benefits based on a requirement for accreditation that does not apply to analogous medical/surgical treatment;

e.   Denying benefits based on a requirement for accreditation, despite the fact that Innercept obtained accreditation while K.G. was in treatment, with such accreditation being significantly delayed due to the COVID-19 pandemic;

f.   Misrepresenting medical evidence;

g.   Misrepresenting and or disregarding the unanimous medical assessments of K.G.'s treating physicians and therapists;

h.   Denying benefits based on insufficient, inadequate, and biased medical analyses;

12

COMPLAINT                                                                                           CASE NO.

i.  Failing to provide a reasoned evidence-based rationale for denying benefits in the context of overwhelming evidence of medical necessity provided by medical health professionals responsible for K.G.s mental health treatment;

j.  Failing to place the financial interests of its insureds on an equal par with Defendant's own financial interests;

k.  Failing to objectively evaluate Plaintiff's claim and attempting to find phony reasons not to pay their claim;

l.  Failing to conduct a full and fair investigation. This included a one-sided claims handling procedure that was biased against approving medically necessary claims for care at residential treatment facilities;

m.  Conducting a medical analysis of the claim by medical personnel who sought to provide a pretext for denying Plaintiff's claim, instead of looking for reasons to pay the claim and instead of crediting the wealth of medical information establishing medical necessity, as defined under the terms and conditions of the Policy;

n.  Failing to consider the requirements of the California Mental Health Parity Act, as well as the Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA"), which alone provided a basis for overturning ANTHEM's claim denial(s) at issue herein;

o.  Shifting the burden of investigation onto its insureds; and

p.  Engaging in an unlawful pattern of practice for denying medically necessary residential treatment in order to save money and increase profits.

93.     In doing the acts listed above, DEFENDANTS breached the covenant of good faith and fair dealing and engaged in unfair claim settlement practices.

94.     DEFENDANTS continue to engage in the aforementioned acts and said conduct and bad faith constitutes a continuing tort and continuing bad faith to Plaintiff, causing continued damage as described herein beyond the date of the filing of this action.

95.     As a direct and proximate result of the aforementioned conduct of DEFENDANTS, Plaintiff has been damaged in an amount in excess of the jurisdiction of this Court, to be determined at trial.

COMPLAINT                                                                         CASE NO.

96.     As a further direct and proximate result of the aforementioned conduct of DEFENDANTS, Plaintiff suffered financial, mental and emotional distress, including, but not limited to, fear, aggravation, depression, humiliation and anxiety, and have thereby incurred general damages in a sum in excess of the jurisdiction of this court to be determined according to proof at trial.

97.     As a further, direct and proximate result of the aforementioned conduct of DEFENDANTS, Plaintiff has been obliged to expend or incur liability for costs of suit, attorneys' fees and related expenses in an amount not yet fully ascertained, but which will be submitted at the time of trial.

98.     As a further, direct and proximate result of the aforementioned conduct of DEFENDANTS, Plaintiff has suffered other special damages in amounts according to proof at the time of trial which include, but are not limited to, Plaintiff's inability to replace the Plan under the terms and conditions represented to him.

99.     In doing the acts set forth above, DEFENDANTS acted fraudulently, maliciously, oppressively, and in conscious disregard of Plaintiff's rights in a despicable fashion. Plaintiff is therefore entitled to punitive damages in a sum sufficient to punish and deter Defendants so that such conduct will not take place again.

## VIII.     FOURTH CAUSE OF ACTION
### (Negligence against UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN; and DOES 1-10)

100.    Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in this cause of action.

101.    As the provider of health insurance to individuals such as Plaintiff and his dependent(s), Defendant the USF Plan had a duty to ensure that claims, such as are at issue herein, are timely approved and paid. Further, the USF Plan had a duty to ensure that insureds, including but not limited to Plaintiff and his dependent(s), would not have to resort to legal action and incur attorneys' fees in order for medically necessary treatment and care to be covered. Further, The USF Plan had a duty to properly investigate and otherwise vet any entity that it chose to administer its health plan, make claims decisions, including but not limited to

COMPLAINT                                                    CASE NO.

Plaintiff and his dependent(s), to ensure that medically necessary claims such as are at issue herein are properly and timely administered, adjudicated, and paid, and to ensure that the USF Plan does not violate California or Federal law, specifically including the California Parity Law or the MHPAEA.

102.     Plaintiff and his son, K.G., were plan members and beneficiaries when Defendants denied K.G.'s claims for benefits. As such, Defendant the USF Plan owed a duty of care to Plaintiff to ensure medically necessary claims are properly, fairly, timely, and honestly adjudicated.

103.     The USF Plan breached the aforesaid duties of care when it chose to contract with Defendant ANTHEM to administer health care benefits.

104.     Defendant also breached its duty of care to Plaintiff by negligently assigning health claims to Defendant ANTHEM, an entity that has a known pattern and practice of improperly denying medically necessary claims.

105.     As a direct and proximate cause of the Defendant's negligence, Plaintiff suffered damages, including without limitation, financial, mental and emotional distress, including, but not limited to, fear, aggravation, depression, humiliation and anxiety, and has thereby incurred damages in a sum in excess of the jurisdiction of this court to be determined according to proof at trial.

106.     As a further, direct and proximate result of the aforementioned conduct of Defendant, Plaintiff has been obliged to expend or incur liability for costs of suit, attorneys' fees and related expenses in an amount not yet fully ascertained, but which will be submitted at the time of trial.

107.     WHEREFORE, Plaintiffs pray for judgment against Defendant, as hereinafter set forth.

//

//

//

COMPLAINT                                                                                    CASE NO.

## IX.    FIFTH CAUSE OF ACTION
### (Negligence against ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY; and DOES 1-10)

108.    Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth in this cause of action.

109.    As the administrator of health insurance to individuals such as Plaintiff, Defendant ANTHEM had a duty to exercise due care to protect insureds from physical and mental health injuries in making benefit determinations.  Further, ANTHEM had a duty to conduct a reasonable, thorough, fair, timely, honest and comprehensive investigation of health claims, including Plaintiff's and his dependents'. Further, ANTHEM had a duty to ensure that insureds, including but not limited to Plaintiff, would not have to resort to legal action and incur attorneys' fees in order for medically necessary treatment and care to be covered.  Further, ANTHEM had a duty to accurately inform insureds, including Plaintiff, of their rights, duties, and obligations under the contract of insurance, including all claim submission, review, appeal, and legal remedies.

110.    Defendant breached the aforesaid duties of care when it placed its own financial interests above those of the insureds by denying K.G.'s claims without a reasonable basis for doing so.  Defendant further breached the aforesaid duties of care by failing to conduct a reasonable, thorough, fair, timely, honest, and comprehensive investigation of K.G.'s claims for health benefits at issue herein.

111.    As a direct and proximate result of ANTHEM's negligence, Plaintiff suffered financial, mental and emotional distress, including, but not limited to, fear, aggravation, depression, humiliation and anxiety, and thereby incurred damages in a sum in excess of the jurisdiction of this court to be determined according to proof at trial.

112.    As a further, direct and proximate result of the aforementioned conduct of Defendant, Plaintiff has suffered economic and non-economic damages in excess of the jurisdictional minimum of this Court, including without limitation, the loss of Decedent, costs of suit, attorneys' fees and related expenses all in amounts not yet fully ascertained, but which will be submitted at the time of trial.

113.     WHEREFORE, Plaintiff prays for judgment against Defendant, as hereinafter set forth.

## X.     PRAYER FOR RELIEF

### AS TO ALL CAUSES OF ACTION

**WHEREFORE,** Plaintiff prays that the Court grant the following relief as against ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN; and DOES 1 through 10:

114.     General damages for the failure to provide the promised benefits under the subject contract of insurance in a sum to be determined at the time of trial, and a return of the payments which Plaintiff paid to Bridge House and Innercept;

115.     General damages for mental and emotional distress and other incidental damages in a sum to be determined at trial.

116.     Punitive and exemplary damages;

117.     Treble damages as allowed under Cal. Civil Code §3345;

118.     Special damages in an amount according to proof;

119.     For costs of suit herein incurred;

120.     For reasonable attorneys' fees; and

121.     For such other and further relief as the Court deems just and proper.

### JURY TRIAL IS HEREBY DEMANDED

Dated: August 1, 2022                    Respectfully submitted,

                                         **DL LAW GROUP**

                                         By:_____
                                         David M. Lilienstein
                                         Katie J. Spielman
                                         Attorneys for Plaintiff, J.G.

COMPLAINT                                                              CASE NO.

CM-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>David M. Lilienstein (SBN 218923); Katie J. Spielman (SBN 252209)<br>DL Law Group<br>345 Franklin Street, San Francisco, CA 94102<br>　TELEPHONE NO.: (415) 678-5050　　FAX NO. *(Optional)*: (415) 358-8484<br>　E-MAIL ADDRESS: david@dllawgroup.com; katie@dllawgroup.com<br>ATTORNEY FOR *(Name)*: Plaintiff J.G. | *FOR COURT USE ONLY*<br><br>**ELECTRONICALLY**<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br><br>**08/01/2022**<br>**Clerk of the Court**<br>BY: JEFFREY FLORES<br>Deputy Clerk |

| |
|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO<br>　STREET ADDRESS: 400 McAllister Street<br>　MAILING ADDRESS:<br>　CITY AND ZIP CODE: San Francisco, CA 94102<br>　BRANCH NAME: Civic Center Courthouse |

| |
|---|
| CASE NAME:<br>J.G. v. Anthem Blue Cross Life and Health Insurance Company, et al. |

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] **Unlimited**　[ ] **Limited**<br>　(Amount　　　(Amount<br>　demanded　　demanded is<br>　exceeds $25,000)　$25,000 or less) | [ ] Counter　[ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **CGC-22-601043**<br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| [ ] Auto (22) | [X] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | 　condemnation (14) | 　above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | 　types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is　[X] is not　complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
　factors requiring exceptional judicial management:
　a. [ ] Large number of separately represented parties　　d. [ ] Large number of witnesses
　b. [ ] Extensive motion practice raising difficult or novel　　e. [ ] Coordination with related actions pending in one or more
　　　　issues that will be time-consuming to resolve　　　　　courts in other counties, states, or countries, or in a federal
　c. [ ] Substantial amount of documentary evidence　　　　　court
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [X] monetary　b. [X] nonmonetary; declaratory or injunctive relief　c. [X] punitive
4. Number of causes of action *(specify)*: 3; Breach of Contract, Negligence, Breach of Covenant of Good Faith and Fair Dealing
5. This case [ ] is　[X] is not　a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: August 1, 2022

David M. Lilienstein
　　　　(TYPE OR PRINT NAME)　　　　　　　　　　　　　　　　　　　　　(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
　under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result
　in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all
　other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev.September 1, 2021] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

**DATE:**    **JAN 04, 2023**

**TIME:**    **10:30 am**

**PLACE:**    **Department 610**
                     **400 McAllister Street**
                     **San Francisco, CA  94102-3680**

All parties must appear and comply with Local Rule 3.

> CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.  However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed and served twenty-five days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.   **This case is eligible for electronic filing and service per Local Rule 2.11.  For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

### ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS

> **IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN MEDIATION, ARBITRATION, NEUTRAL EVALUATION,  AN EARLY SETTLEMENT CONFERENCE, OR OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**
>
> (SEE LOCAL RULE 4)

Plaintiff  **must**  serve a copy of the Alternative Dispute Resolution (ADR) Information Package on each defendant along with the complaint.  (CRC 3.221.) The ADR package may be accessed at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution or you may request a paper copy from the filing clerk.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the ADR Information Package prior to filing the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator**
**400  McAllister Street, Room 103-A**
**San Francisco, CA  94102**
**(415) 551-3869**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**



# Superior Court of California, County of San Francisco
## Alternative Dispute Resolution
## Information Package



> The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action together with the cross-complaint. (CRC 3.221(c).)

**WHAT IS ADR?**
Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial.  There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences.   In ADR, trained, impartial people decide disputes or help parties decide disputes themselves.  They can help parties resolve disputes without having to go to trial.

**WHY CHOOSE ADR?**
It is the policy of the Superior Court that every long cause, non-criminal, non-juvenile case should participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial. (Local Rule 4.)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.**  A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

> **\*\*Electing to participate in an ADR process does not stop the time period to respond to a complaint or cross-complaint\*\***

**WHAT ARE THE ADR OPTIONS?**
The San Francisco Superior Court offers different types of ADR processes for general civil matters. The programs are described below:

**1)  MANDATORY SETTLEMENT CONFERENCES**
Settlement conferences are appropriate in any case where settlement is an option. The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute. Mandatory settlement conferences are ordered by the court and are often held near the date a case is set for trial, although they may be held earlier if appropriate. A party may elect to apply to the Presiding Judge for a specially set mandatory settlement conference by filing an ex parte application. See Local Rule 5.0 for further instructions. Upon approval by the Presiding Judge, the court will schedule the conference and assign a settlement conference officer.

**2)  MEDIATION**
Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO (BASF),** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending. Experienced professional mediators work with parties to arrive at a mutually agreeable solution. The mediators provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. BASF staff handles conflict checks and full case management. The success rate for the program is 67% and the satisfaction rate is 99%. BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the fee are available to those who qualify. For more information, call 415-982-1600 or email adr@sfbar.org.

**(B) JUDICIAL MEDIATION PROGRAM** provides mediation with a San Francisco  Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional  malpractice, insurance coverage,  toxic torts and industrial accidents. Parties may utilize this program at any time throughout the litigation process. Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program.  A preference for a specific judge may be indicated.  The court will coordinate assignment of cases for the program.  There is no charge. Information about the Judicial Mediation Program may be found by visiting the ADR page on the court's website: www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

**(C)  PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may select any private mediator of their choice. The selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

**(D) COMMUNITY BOARDS MEDIATION SERVICES:** Mediation services are offered by Community Boards (CB), a nonprofit resolution center, under the Dispute Resolution Programs Act. CB utilizes a three-person panel mediation process in which mediators work as a team to assist the parties in reaching a shared solution. To the extent possible, mediators are selected to reflect the demographics of the disputants. CB has a success rate of 85% for parties reaching a resolution and a consumer satisfaction rate of 99%. The fee is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available. For more information, call 415-920-3820 or visit communityboards.org.

**3) ARBITRATION**

An arbitrator is a neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

**(A) JUDICIAL ARBITRATION**

When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.1 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after being assigned to judicial arbitration. There is no cost to the parties for judicial arbitration.

**(B) PRIVATE ARBITRATION**

Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

**HOW DO I PARTICIPATE IN ADR?**

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's or court-affiliated ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet and available on the court's website); or
- Indicating your ADR preferences on the Case Management Statement (available on the court's website); or
- Contacting the court's ADR Department (see below), the Bar Association of San Francisco's ADR Services, or Community Boards.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103-A, San Francisco, CA 94102
415-551-3869
Or, visit the court's ADR page at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE AND FILE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. YOU MUST ALSO CONTACT BASF OR COMMUNITY BOARDS TO ENROLL IN THEIR LISTED PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF OR COMMUNITY BOARDS.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name  *and address*) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: <br><br> ATTORNEY FOR *(Name)*: | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO**
400 McAllister Street
San Francisco, CA 94102-4514

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER: _____ |
|---|---|
| | **DEPARTMENT 610** |

**1)   The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐   **Mediation Services of the Bar Association of San Francisco (BASF)** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐   **Mediation Services of Community Boards (CB)** – Service in conjunction with DRPA, CB provides case development and one three-hour mediation session.  Additional sessions may be scheduled. The cost is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available  to those who qualify. communityboards.org

☐   **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐   **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no  equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this  program.  www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

☐   **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court  judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

Judge Requested (see list of Judges currently participating in the program): _____

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

☐ 30-90 days   ☐ 90-120 days   ☐ Other (please specify) _____

☐   **Other ADR process** (describe) _____

**2)   The parties agree that the ADR Process shall  be completed by (date):** _____

**3)   Plaintiff(s) and Defendant(s) further agree  as follows:**

_____

_____                      _____
Name of Party Stipulating                                              Name of Party Stipulating

_____                      _____
Name of Party or Attorney Executing Stipulation         Name of Party or Attorney Executing Stipulation

_____                      _____
Signature of Party or Attorney                                     Signature of Party or Attorney

☐ Plaintiff ☐ Defendant ☐ Cross-defendant          ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant

Dated: _____                              Dated: _____

☐  *Additional signature(s) attached*

ADR-2  10/18                    **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

1
2
3
4
5
6
7
8

Elizabeth K. Green, State Bar No. 199634
egreen@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, California 91324
Telephone: (818) 886-2525
Facsimile: (818) 350-6272

Attorneys for Plaintiff
J.G.

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**09/29/2022**
**Clerk of the Court**
BY: EDNALEEN ALEGRE
Deputy Clerk

9

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

10

COUNTY OF SAN FRANCISCO

11

12

13

14

15

16

17

18

J.G.,

Plaintiff,

v.

UNIVERSITY OF SAN FRANCISCO
WELFARE BENEFIT PLAN,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: CGC-22-601043

**FIRST AMENDED COMPLAINT
FOR:**

**BREACH OF THE EMPLOYEE
RETIREMENT INCOME
SECURITY ACT OF 1974;
ENFORCEMENT AND
CLARIFICATION OF RIGHTS;
PREJUDGMENT AND
POSTJUDGMENT INTEREST;
AND ATTORNEYS' FEES AND
COSTS**

19

20

21

22

Plaintiff, J.G., herein sets forth the allegations of his Complaint against

Defendant, UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN.

**PRELIMINARY ALLEGATIONS**

23

24

25

26

27

28

1.      Jurisdiction - This action is brought under 29 U.S.C. §§ 1132(a), (e), (f)

and (g) of the Employee Retirement Income Security Act of 1974 (hereinafter

"ERISA") as it involves a claim by Plaintiff for employee benefits under an

employee benefit plan regulated and governed under ERISA. Jurisdiction is

predicated under these code sections as well as 28 U.S.C. § 1331 as this action

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886-2525

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1   involves a federal question. This action is brought for the purpose of obtaining

2   benefits under the terms of an employee benefit plan and enforcing Plaintiff's rights

3   under the terms of an employee benefit plan. Plaintiff seeks relief, including but not

4   limited to: payment of benefits, prejudgment and post judgment interest, and

5   attorneys' fees and costs.

6       2.      Plaintiff J.G. is, and at all times relevant was, a resident of San Mateo

7   County, California. Therefore, venue is proper in this judicial district pursuant to 29

8   U.S.C. § 1132(e)(2).

9       3.      Plaintiff is informed and believes that Defendant University of San

10   Francisco Welfare Benefit Plan ("USF Plan") is a group employee benefit health

11   plan regulated by ERISA, with its principal place of business in San Francisco

12   County, California.

13       4.      Plaintiff was at all relevant times a covered participant under the USF

14   Plan pursuant to which he and his dependent son, K.G., were entitled to health

15   benefits.

16       5.      Plaintiff is informed and believes that Anthem Blue Cross Life and

17   Health Insurance Company ("Anthem") acted as claims administrator for the USF

18   Plan.

19   **FIRST CAUSE OF ACTION**

20   **FOR DENIAL OF PLAN BENEFITS UNDER ERISA**

21       6.      Plaintiff incorporates by reference the foregoing paragraphs as though

22   fully set forth herein.

23   K.G.'s Mental Health History

24       7.      K.G. has had a long history of mental illness and serious emotional

25   disturbances, which at all relevant times, only worsened and became more severe, to

26   the point where, as set forth below, he was a threat to his own life.

27

28

8.     At all times relevant, K.G. suffered from autism spectrum disorder, generalized anxiety disorder, major depressive disorder, and neurodevelopmental disorders.

9.     From an early age, K.G. began displaying signs of debilitating anxiety and autism spectrum disorder. He struggled with fine motor skills and social skills, and when he became overwhelmed, he would shut down, isolate, avoid and/or withdraw.

10.     At approximately the age of seven, K.G. was diagnosed with Asperger's Syndrome/High Functioning Autism.

11.     By approximately age 13, K.G.'s anxiety and depression had progressed to the point that he had difficulty attending school and completing schoolwork.

12.     In response to K.G.'s declining mental health, he was admitted to multiple treatment centers. While he showed some improvement in functionality in a structured environment, he still demonstrated troublesome and potentially dangerous mental health issues.

13.     Despite treatment, K.G.'s condition continued to deteriorate as a teenager. He isolated, had difficulty attending school and completing assignments, and, as a result, did not graduate with his high school class.

14.     At the end of his 12th grade year, K.G. discontinued his medication, had an outburst at home that included suicidal threats, and as a result was admitted to inpatient psychiatric hospitalization at Stanford Hospital for 17 days.

15.     Upon discharge from the hospital, K.G. admitted to a transitional living treatment center where K.G. attempted suicide by hanging himself from a tree and was rescued by neighbors.

16.     Following the suicide attempt, K.G. was admitted to McKay Dee Hospital for inpatient psychiatric hospitalization.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

K.G.'s Admission to Bridge House

17.     Following his hospitalization, on July 14, 2020, K.G. was admitted to residential treatment at Bridge House residential treatment center ("Bridge House"). He was 18 years old. Bridge House is licensed by the State of Utah to provide mental health residential treatment for young adults.

18.     K.G. received treatment at Bridge House for diagnoses of autism spectrum disorder, generalized anxiety disorder, and major depressive disorder recurrent severe without psychotic features, other neurodevelopmental disorder, and history of avoidant personality traits.

19.     K.G.'s treatment included weekly psychiatrist visits, individual therapy, group therapy, psychoeducational testing, milieu therapy, family therapy, medical exams, and psychiatric evaluations.

20.     He struggled with severe treatment resistant depression and ongoing suicidal ideation and planning at Bridge House. Staff at Bridge House found a noose that K.G. had created and hidden.

21.     K.G.'s Bridge House treatment team determined that a higher level of care was required for K.G.'s ongoing safety and care due to K.G.'s ongoing suicidal ideation, planning, and preparation. Bridge House recommended two programs, including Innercept Treatment Center ("Innercept"). One program was unwilling to accept K.G. due to his safety concerns. Innercept was willing to accept K.G.

22.     K.G. discharged from Bridge House on October 20, 2020.

Anthem Denied Benefits for K.G.'s Residential Treatment at Bridge House

23.     Anthem initially approved K.G.'s benefits for residential treatment at Bridge House as of his admission on July 14, 2020 and continued to approve benefits through July 27, 2020.

24.     In a February 9, 2021 letter, Anthem wrote that it was denying further benefits for K.G.'s residential treatment at Bridge House. Anthem wrote that the Plan requires residential treatments have accreditation with one of four national

organizations. Without stating so, Anthem inferred that benefits were denied because Bridge House did not have such accreditation(s).

25.     On February 24, 2021, Plaintiff submitted a first level appeal in writing. Plaintiff wrote that the Plan's accreditation requirement for residential treatment violated the Federal Mental Health Parity and Addiction Equity Act ("Federal Parity Act") because the Plan did not require the same accreditation requirement for residential treatment for mental health conditions as the Plan required for treatment of physical conditions at skilled nursing facilities. Plaintiff wrote that skilled nursing facilities and residential treatment are in the same classification of benefits and therefore skilled nursing is the analogous medical treatment to residential treatment. Plaintiff also explained that Bridge House is licensed as a residential treatment center with the State of Utah.

26.     On May 28, 2021, Anthem denied the appeal. Anthem wrote that Bridge House "is Wilderness Treatment Center which is not covered by your benefits plan." Anthem did not respond to the appeal which specifically explained that Bridge House is licensed as a residential treatment center, not wilderness treatment center, by the State of Utah.

27.     On June 7, 2021, Anthem wrote a letter amending its May 28, 2021 denial letter. Anthem wrote that Bridge House is not properly accredited as a residential treatment center. Again, Anthem did not respond to the appeal which specifically identified how the Plan's accreditation requirement for residential treatment violated the Federal Parity Act.

28.     Plaintiff's representative contacted Anthem by telephone and issued a grievance regarding errors in the appeal denial letters of May 28, 2021 and June 7, 2021.

29.     On August 6, 2021, Anthem denied Plaintiff's second level appeal. Anthem repeated its denial on the basis that Bridge House is not properly accredited

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

as a residential treatment center. Anthem did not explain how the Plan's

accreditation requirement for residential treatment satisfied the Federal Parity Act.

<u>K.G.'s Admission to Innercept Treatment Center</u>

30.    On October 20, 2020, K.G. admitted to residential treatment at

Innercept upon recommendation from Bridge House. Innercept is licensed by the

State of Idaho to provide mental health residential treatment.

31.    K.G. was treated for diagnoses of autism spectrum disorder,

generalized anxiety disorder, major depressive disorder recurrent severe,

neurodevelopmental disorder, and avoidant personality disorder.

32.    K.G.'s treatment included group psychotherapy, individual and family

therapy, therapeutic structure, and psychiatric visits.

33.    K.G.'s treatment continued to be medically necessary as he struggled

with recovery from multiple mental illnesses. For example, on April 28, 2021, K.G.

consumed all of his medications for one week at one time.

34.    K.G. discharged from Innercept on July 15, 2022.

<u>Anthem Denied Benefits for K.G.'s Residential Treatment at Innercept</u>

35.    On October 23, 2020, Anthem denied benefits for K.G.'s residential

treatment at Innercept on the basis that the "service is excluded or not covered under

your plan benefits." Anthem wrote that the Plan requires residential treatment

providers have accreditation with one of four national organizations. Without stating

so, Anthem inferred that benefits were denied because Innercept did not have such

accreditation(s).

36.    On June 10, 2021, Plaintiff submitted a first level appeal in writing and

requested benefits for all dates of services at Innercept from October 20, 2020 to

K.G.'s discharge. Plaintiff wrote that effective March 20, 2021, Innercept became

accredited with The Joint Commission, one of the four national organizations listed

in the Plan's definition of residential treatment. Plaintiff wrote that the Plan's

accreditation requirement for residential treatment violated the Federal Mental

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

Health Parity and Addiction Equity Act ("Federal Parity Act") because the Plan did not require the same accreditation requirement for residential treatment for mental health conditions as the Plan required for treatment of physical conditions at skilled nursing facilities. Plaintiff wrote that skilled nursing facilities and residential treatment are in the same classification of benefits and therefore skilled nursing is the analogous medical treatment to residential treatment. Plaintiff also explained that Innercept is licensed by the State of Idaho as a residential treatment center to provide mental health residential treatment.

37.   On June 22, 2021, Anthem denied benefits for dates of service March 20, 2021 through June 15, 2021. Anthem did not respond to the appeal regarding dates of service October 20, 2020 to March 19, 2021. Anthem claimed K.G.'s residential treatment was not medically necessary. Anthem wrote that K.G. "went to residential treatment due to a risk of harming yourself" but inexplicably claimed that K.G. did not have thoughts of harming himself or tried this before or had means to carry it out. Anthem's claim is contrary to the evidence presented on appeal regarding K.G.'s ongoing suicidal ideation and danger to himself by suicide.

38.   On July 28, 2022, Plaintiff submitted a second level appeal in writing. Again, Plaintiff requested benefits for all dates of service at Innercept. Plaintiff provided letters of support demonstrating the medical necessity of K.G.'s treatment at Innercept, treatment records for Bridge House and Innercept, psychological assessment, record of K.G.'s overdose which at Innercept, and a detailed timeline of K.G.'s mental health treatment. Plaintiff explained that the entirety of his treatment at Innercept was medically necessary based on the treatment records and letters of support from physicians and therapists who had treated K.G.

39.   Anthem has not issued an appeal decision regarding dates of service October 20, 2020 to March 19, 2021 or through discharge on July 15, 2022.

40.   Anthem has not responded to Plaintiff's second level appeal.

41.   Plaintiff exhausted all appeals under the Plan.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

42.    Plaintiff incurred the cost of John's treatment at Bridge House and Innercept.

43.    Anthem wrongly denied benefits for K.G.'s treatment in the following respects, among others:

(a)    Failure to authorize and pay for mental health services rendered to K.G. as required by the Plan at a time when Anthem knew K.G. was entitled to such benefits under the terms of the Plan;

(b)    Failure to provide reasonable explanations of the bases relied on under the terms of the Plan, in relation to the applicable facts and plan provisions, for the denial of claims for mental health benefits;

(c)    After claims were denied in whole or in part, failure to adequately describe to Plaintiff any additional material or information necessary to perfect his request for benefits along with an explanation of why such material is or was necessary;

(d)    Failure to properly investigate the merits of the request for benefits and appeal submission;

(e)    Failure to comply with the Federal Parity Act and the California Mental Health Parity Act; and

(f)    Failure to provide Plaintiff with a full and fair review pursuant to 29 C.F.R. § 2560.501-1 (h)(3)(iii) by failing to consult with health care professionals who have appropriate training and experience in the field of medicine involved in the claims and appeals.

44.    Plaintiff is informed and believes and thereon alleges that Anthem wrongfully denied mental health benefits by other acts or omissions of which Plaintiff is presently unaware, but which may be discovered and which Plaintiff will immediately make Defendant aware of once said acts or omissions are discovered by Plaintiff.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

45.     Following the denial of benefits under the Plan, Plaintiff exhausted all administrative remedies required under ERISA, and performed all duties and obligations on his part to be performed.

46.     As a proximate result of the denial of medical benefits due Plaintiff, Plaintiff has been damaged in the amount of all the bills incurred for K.G.'s treatment at Bridge House and Innercept, in a total sum to be proven at the time of trial.

47.     As a further direct and proximate result of this improper determination regarding the medical claims, Plaintiff, in pursuing this action, has been required to incur attorneys' costs and fees. Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is entitled to have such fees and costs paid by Defendant.

48.     Due to the wrongful conduct of Anthem, Plaintiff is entitled to enforce his rights under the terms of the Plan and to clarify his rights to future benefits under the terms of the Plan.

**SECOND CAUSE OF ACTION**
**FOR EQUITABLE RELIEF**

49.     Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

50.     As a direct and proximate result of the failure of the Defendant to pay mental health benefits, and the resulting injuries and damages sustained by Plaintiff as alleged herein, Plaintiff is entitled to and hereby requests that this Court grant Plaintiff the following relief pursuant to 29 U.S.C. § 1132(a)(1)(B):

(a)     Restitution of all past benefits due to Plaintiff, plus prejudgment and post-judgment interest at the lawful rate; and

(b)     Such other and further relief as the Court deems necessary and proper to protect the interests of Plaintiff under the Plan.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1

## **REQUEST FOR RELIEF**

2   Plaintiff requests judgment against Defendant as follows:

3   1.  Payment of health care benefits due to Plaintiff under the Plan;

4   2.  Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys'

5 fees incurred in pursuing this action;

6   3.  Payment of prejudgment and post judgment interest as allowed for

7 under ERISA; and

8   4.  For such other and further relief as the Court deems just and proper.

9

10 DATED: September 29, 2022     KANTOR & KANTOR, LLP

11

12          BY: *s/ Elizabeth K. Green*

13             Elizabeth K. Green
              Attorneys for Plaintiff

14             J.G.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

10

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
J.G.

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br><br>400 McAllister Street, San Francisco, CA 94102 | CASE NUMBER:<br>*(Número del Caso):*<br>CGC-22-601043<br><br>**CGC-22-601043** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Elizabeth K. Green, Kantor and Kantor, LLP, 19839 Nordhoff Street, Northridge, CA 91324; (818) 886-2525

| DATE:<br>*(Fecha)* **10/11/2022** | Clerk, by<br>*(Secretario)* _____ **EDNALEEN ALEGRE** | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*


[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)        ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)        ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |

MC–050

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Elizabeth K. Green (SBN 199634)
Kantor and Kantor, LLP
19839 Nordhoff Street, Northridge, CA 91324
TELEPHONE NO.: 818-886-2525   FAX NO. (Optional): 818-350-6272
E-MAIL ADDRESS (Optional): egreen@kantorlaw.net
ATTORNEY FOR (Name): Plaintiff, J.G.

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**10/12/2022**
**Clerk of the Court**
BY: ERNALYN BURA
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco. CA 94102
BRANCH NAME: Civic Center Courthouse

CASE NAME:
J.G. v. University of San Francisco Welfare Benefit Plan

| SUBSTITUTION OF ATTORNEY—CIVIL (Without Court Order) | CASE NUMBER: CGC-22-601043 |
|---|---|

THE COURT AND ALL PARTIES ARE NOTIFIED THAT (name): Plaintiff, J.G.   makes the following substitution:

1. **Former legal representative** ☐ Party represented self   ☒ Attorney (name): David M. Lilienstein
2. **New legal representative** ☐ Party is representing self*   ☑ Attorney
   a. Name: Elizabeth K. Green   b. State Bar No. (if applicable): 199634
   c. Address (number, street, city, ZIP, and law firm name, if applicable):
      Kantor and Kantor, LLP
      19839 Nordhoff Street, Northridge, CA 91324
   d. Telephone No. (include area code): 818-886-2525
3. The party making this substitution is a   ☑ plaintiff ☐ defendant ☐ petitioner ☐ respondent ☐ other (specify):

| **\*NOTICE TO PARTIES APPLYING TO REPRESENT THEMSELVES** |
|---|

• Guardian          • Personal Representative          • Guardian ad litem
• Conservator     • Probate fiduciary                    • Unincorporated
• Trustee              • Corporation                              association

If you are applying as one of the parties on this list, you may NOT act as your own attorney in most cases. Use this form to substitute one attorney for another attorney. SEEK LEGAL ADVICE BEFORE APPLYING TO REPRESENT YOURSELF.

| **NOTICE TO PARTIES WITHOUT ATTORNEYS** |
|---|
| A party representing himself or herself may wish to seek legal assistance. Failure to take timely and appropriate action in this case may result in serious legal consequences. |

4. ☒ I consent to this substitution.
   Date: 10-06-22

   J.G.
   (TYPE OR PRINT NAME)                                                     (SIGNATURE OF PARTY)

5. ☑ I consent to this substitution.
   Date: 10-3-2022
   David M. Lilienstein
   (TYPE OR PRINT NAME)                                                     (SIGNATURE OF FORMER ATTORNEY)

6. ☒ I consent to this substitution.
   Date: 10-06-22
   Elizabeth K. Green
   (TYPE OR PRINT NAME)                                                     (SIGNATURE OF NEW ATTORNEY)

(See reverse for proof of service by mail)                                        Page 1 of 2

| Form Adopted For Mandatory Use Judicial Council of California MC-050 [Rev. January 1, 2009] | SUBSTITUTION OF ATTORNEY—CIVIL (Without Court Order) | Code of Civil Procedure, §§ 284(1), 285; Cal. Rules of Court, rule 3.1362 www.courtinfo.ca.gov |
|---|---|---|

MC–050

| CASE NAME: | CASE NUMBER: |
|---|---|
| J.G. v. University of San Francisco Welfare Benefit Plan | CGC-22-601043 |

## PROOF OF SERVICE BY MAIL
### Substitution of Attorney—Civil

**Instructions:** *After having all parties served by mail with the Substitution of Attorney—Civil, have the person who mailed the document complete this Proof of Service by Mail. An <u>unsigned</u> copy of the Proof of Service by Mail should be completed and served with the document. Give the Substitution of Attorney—Civil and the completed Proof of Service by Mail to the clerk for filing. If you are representing yourself, someone else must mail these papers and sign the Proof of Service by Mail.*

1. I am over the age of 18 and **not a party to this cause.** I am a resident of or employed in the county where the mailing occurred. My residence or business address is *(specify):*

2. I served the Substitution of Attorney—Civil by enclosing a true copy in a sealed envelope addressed to each person whose name and address is shown below and depositing the envelope in the United States mail with the postage fully prepaid.

    (1 ) Date of mailing:                    (2) Place of mailing *(city and state):*

3. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 10/06/2022

Wendy Castillo
_____
(TYPE OR PRINT NAME)

*Wendy Castillo*
_____
(SIGNATURE)

### NAME AND ADDRESS OF EACH PERSON TO WHOM NOTICE WAS MAILED

4. a. Name of person served:  David Lilienstein
   b. Address *(number, street, city, and ZIP):*  345 Franklin Street, San Francisco, CA 94102

   c. Name of person served:
   d. Address *(number, street, city, and ZIP):*

   e. Name of person served:
   f. Address *(number, street, city, and ZIP):*

   g. Name of person served:
   h. Address *(number, street, city, and ZIP):*

   i. Name of person served:
   j. Address *(number, street, city, and ZIP):*

☐ List of names and addresses continued in attachment.

MC-050 [Rev. January 1, 2009]       **SUBSTITUTION OF ATTORNEY—CIVIL**       **Page 2 of 2**
                                    **(Without Court Order)**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Elizabeth Green,Esq \| SBN: 199634<br>KANTOR & KANTOR LLP<br>19839 Nordhoff St   Northridge, CA 913243331<br><br>TELEPHONE NO.: (818) 886-2525 \| FAX NO.: \| E-MAIL ADDRESS egreen@kantorlaw.net<br>ATTORNEY FOR *(Name):* Plaintiff: J.G. | *FOR COURT USE ONLY*<br><br>**ELECTRONICALLY**<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br><br>**10/20/2022**<br>**Clerk of the Court**<br>BY: YOLANDA TABO-RAMIREZ<br>**Deputy Clerk** |

**Superior Court of California, County of San Francisco**

STREET ADDRESS: 400 McAllister Street Rm 103

CITY AND ZIP CODE: San Francisco, CA 94102

BRANCH NAME:

| | |
|---|---|
| PLAINTIFF/PETITIONER: J.G.<br>DEFENDANT/RESPONDENT: University of San Francisco Welfare Benefit Plan | CASE NUMBER:<br>CGC-22-601043 |

| | |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>Greenberg |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☑ Summons
   b. ☑ Complaint
   c. ☑ Alternative Dispute Resolution (ADR) package
   d. ☑ Civil Case Cover Sheet
   e. ☐ Cross-Complaint
   f. ☑ other *(specify documents):* **First Amended Complaint; Notice to Plaintiff; Substitution of Attorney-Civil**
3. a.  Party served *(specify name of party as shown on documents served):*
   **University of San Francisco Welfare Benefit Plan**

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **Julian Martinson - Agent for Service of Process**
   **Age: 20-25 \| Weight: 140 \| Hair: Brown \| Sex: Female \| Height: 5'[4" \| Eyes: Brown \| Race: White**
4. Address where the party was served:  **2130 Fulton St**
   **San Francisco, CA 94117-1080**
5. I served the party *(check proper box)*
   a. ☑ **by personal service.**  I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* **10/18/2022**   (2) at *(time):* **9:25 AM**

   b. ☐ **by substituted service.** On *(date):*   at  *(time):*  I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

   (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served.  I informed him of her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party.  I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box.  I informed him of her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):*   from *(city):*                    **or** ☐ a declaration of mailing is attached.

   (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                      (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt.*) (Code Civ. Proc., § 415.30.)*

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☑ On behalf of **University of San Francisco Welfare Benefit Plan**

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☑ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**

a. Name: **Andy Esquer - Nationwide Legal, LLC REG: 12-234648**

b. Address: **1609 James M Wood Blvd.  Los Angeles, CA 90015**

c. Telephone number: **(213) 249-9999**

d. **The fee** for service was: **$ 170.35**

e. I am:

    (1) ☐ not a registered California process server.

    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☑ registered California process server:

        (i) ☐ owner    ☐ employee    ☑ independent contractor.

        (ii) Registration No.: **1009**

        (iii) County: **San Francisco**

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **10/18/2022**

**Nationwide Legal, LLC**
**1609 James M Wood Blvd.**
**Los Angeles, CA 90015**
**(213) 249-9999**
**www.nationwideasap.com**

_____
**Andy Esquer**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SAN FRANCISCO

400 MCALLISTER STREET, SAN FRANCISCO, CA 94102-4514

| | |
|---|---|
| J.G.<br><br>PLAINTIFF (S)<br><br>VS.<br><br>ANTHEM BLUE CROSS LIFE AND HEALTH et al<br><br>DEFENDANT (S) | **Case Management Department 610**<br>**Case Management Order**<br><br><br>**NO.: CGC-22-601043**<br><br><br>**Order Continuing Case Management Conference** |

TO: ALL COUNSEL AND SELF-REPRESENTED LITIGANTS

The Jan-04-2023 CASE MANAGEMENT CONFERENCE is canceled, and it is hereby ordered:

This case is set for a case management conference on Feb-15-2023 in Department 610 at 10:30 am to obtain an answer(s) from, or enter default(s) against, defendant(s) as to first amended complaint.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than fifteen (15) days before the case management conference. However, it would facilitate the issuance of a case management order without an appearance at the case management conference if the case management statement is filed and served twenty-five (25) days before the case management conference.

PLAINTIFF(S) must serve a copy of this notice on all parties not listed on the attached proof of service within five (5) days of the date of this order.

DATED:  DEC-14-2022                    SAMUEL K. FENG
                                       _____
                                       JUDGE OF THE SUPERIOR COURT

I, the undersigned, certify that I am an employee of the Superior Court of California, County of San Francisco and not a party to the above-entitled cause and that on DEC-14-2022 I served the attached Order Continuing Case Management Conference by placing a copy thereof in an envelope addressed to all parties to this action as listed below.  I then placed the envelope in the outgoing mail at 400 McAllister Street, San Francisco, CA 94102, on the date indicated above for collection, sealing of the envelope, attachment of required prepaid postage, and mailing on that date, following standard court practice.

Dated :  DEC-14-2022                              By: MADELLE MACADANGDANG

ELIZABETH K. GREEN (199634)
KANTOR AND KANTOR LLP
19839 NORDHOFF STREET
NORTHRIDGE, CA  91324

CERTIFICATE OF SERVICE BY MAIL
Form 000001

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Barnumber, and address): FOR COURT USE ONLY | | | | | |
|---|---|---|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*        *FOR COURT USE ONLY*
Elizabeth Green,Esq | SBN: 199634 KANTOR &
KANTOR LLP
19839 Nordhoff Street, Northridge, CA 91324

TELEPHONE NO.: (818) 886-2525 | FAX NO. | E-MAIL ADDRESS *(Optional):* egreen@kantorlaw.net
ATTORNEY FOR *(Name):* :

**SAN FRANCISCO SUPERIOR COURT**
STREET ADDRESS: 400 MC ALLISTER ST.  1ST FLOOR
CITY AND ZIP CODE: SAN FRANCISCO, CA 94102
BRANCH NAME: CIVIL DIVISION

PLAINTIFF/PETITIONER: J.G.
DEFENDANT/RESPONDENT: Anthem Blue Cross Life and Health, et al.

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*
**12/20/2022**
**Clerk of the Court**
BY: RONNIE OTERO
**Deputy Clerk**

CASE NUMBER:
CGC-22-601043

| **PROOF OF SERVICE** | Hearing Date: | Day | Hearing Time: | Dept: | Ref. No. or File No.: Greenberg v. Anthem Blue Cross |
|---|---|---|---|---|---|

AT THE TIME OF SERVICE I WAS AT LEAST 18 YEARS OF AGE AND NOT A PARTY TO THIS ACTION
**I SERVED COPIES** OF THE FOLLOWING DOCUMENTS:

**Order Continuing Case Management Conference**

PARTY SERVED: **University of San Francisco**

PERSON SERVED: **Heysoll Alvarez  - HR Department**

DATE & TIME: **12/19/2022**
**2:02 PM**

ADDRESS: **University of San Francisco**
**2800 TURK STREET LMM 339**
**San Francisco, CA 94118**

MANNER OF SERVICE:
 **Personal Service - By personally delivering copies.**

Fee for Service: **$ .00**
County:  **San Francisco**
Registration No.:
**N** **Nationwide Legal, LLC Reg: 12-234648**
**1609 James M Wood Blvd.**
**Los Angeles, CA 90015**
**(213) 249-9999**
**Ref: Greenberg v. Anthem Blue Cross**

I declare under penalty of perjury under the laws of the
The State of California that the foregoing information
contained in the return of service and statement of
service fees is true and correct and that this declaration
was executed on **December 20, 2022**.

Signature: *Jose Rico*
**Jose Rico**

**PROOF OF SERVICE**

CIV-050

**- DO NOT FILE WITH THE COURT-**
**-UNLESS YOU ARE APPLYING FOR A DEFAULT JUDGMENT UNDER CODE OF CIVIL PROCEDURE § 585 -**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):*<br>Elizabeth K. Green (SBN 199634)<br>Kantor & Kantor, LLP<br>19839 Nordhoff Street<br>Northridge, CA 91324<br><br>ATTORNEY FOR *(name)*: Plaintiff, J.G. | TELEPHONE NO.:<br>818-886-2525 | FOR COURT USE ONLY |
|---|---|---|

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco. CA 94102
BRANCH NAME: Civic Center Courthouse

PLAINTIFF: J.G.

DEFENDANT: University of San Francisco Welfare Benefit Plan

| STATEMENT OF DAMAGES<br>(Personal Injury or Wrongful Death) | CASE NUMBER:<br>CGC-22-601043 |
|---|---|

To *(name of one defendant only):* University of San Francisco Welfare Benefit Plan
Plaintiff *(name of one plaintiff only):* J.G.
seeks damages in the above-entitled action, as follows:

AMOUNT

1. **General damages**
   a. ☐ Pain, suffering, and inconvenience .................................................................... $ _____
   b. ☐ Emotional distress. ......................................................................................... $ _____
   c. ☐ Loss of consortium ......................................................................................... $ _____
   d. ☐ Loss of sociey and companionship *(wrongful death actions only)* ..................... $ _____
   e. ☐ Other  *(specify)* ............................................................................................. $ _____
   f. ☐ Other  *(specify)* ............................................................................................. $ _____
   g. ☐ Continued on Attachment 1.g.

2. **Special damages**
   a. ☒ Medical expenses *(to date)* ............................................................................ $      381,239.46
   b. ☐ Future medical expenses *(present value)* ....................................................... $ _____
   c. ☐ Loss of earnings *(to date)* ............................................................................. $ _____
   d. ☐ Loss of future earning capacity *(present value)* ............................................. $ _____
   e. ☐ Property damage ............................................................................................ $ _____
   f. ☐ Funeral expenses *(wrongful death actions only)* ............................................. $ _____
   g. ☐ Future contributions *(present value) (wrongful death actions only)* ................. $ _____
   h. ☐ Value of personal service, advice, or training *(wrongful death actions only)* ...... $ _____
   i. ☒ Other  *(specify)*  Attorney's fees ................................................................... $       50,000.00
   j. ☒ Other  *(specify)*  Costs .................................................................................. $          240.00
   k. ☐ Continued on Attachment 2.k.

3. ☐ **Punitive damages:** Plaintiff reserves the right to seek punitive damages in the amount of *(specify)*.. $ _____
   when pursuing a judgment in the suit filed against you.

Date: 12/06/2022

Elizabeth K. Green
_____
(TYPE OR PRINT NAME)

▶ /s/ Elizabeth K. Green
_____
(SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

(Proof of service on reverse)

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-050 [Rev. January 1, 2007]

**STATEMENT OF DAMAGES**
**(Personal Injury or Wrongful Death)**

Code of Civil Procedure, §§ 425.11, 425.115
*www.courts.ca.gov*

**CIV-050**

| PLAINTIFF: J.G.<br>DEFENDANT: University of San Francisco Welfare Benefit Plan | CASE NUMBER:<br>CGC-22-601043 |
|---|---|

### PROOF OF SERVICE

*(After having the other party served as described below, with any of the documents identified in item 1, have the person who served the documents complete this Proof of Service. Plaintiff cannot serve these papers.)*

1. I served the
   a. ☐ Statement of Damages   ☐ Other   *(specify):*
   b. on *(name):* University of San Francisco Welfare Benefit Plan
   c. by serving ☐ defendant   ☐ other   *(name and title or relationship to person served):*
   d. ☐ by delivery   ☐ at home   ☐ at business
      (1) date:
      (2) time:
      (3) address:
   e. ☐ by mailing
      (1) date:
      (2) place:

2. Manner of service *(check proper box):*
   a. ☒ **Personal service.** By personally delivering copies. (CCP § 415.10)
   b. ☐ **Substituted service on corporation, unincorporated association (including partnership), or public entity.** By leaving, during usual office hours, copies in the office of the person served with the person who apparently was in charge and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP § 415.20(a))
   c. ☐ **Substituted service on natural person, minor, conservatee, or candidate.** By leaving copies at the dwelling house, usual place of abode, or usual place of business of the person served in the presence of a competent member of the household or a person apparently in charge of the office or place of business, at least 18 years of age, who was informed of the general nature of the papers, and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP § 415.20(b)) **(Attach separate declaration or affidavit stating acts relied on to establish reasonable diligence in first attempting personal service.)**
   d. ☐ **Mail and acknowledgment service.** By mailing (by first-class mail or airmail, postage prepaid) copies to the person served, together with two copies of the form of notice and acknowledgment and a return envelope, postage prepaid, addressed to the sender. (CCP § 415.30) **(Attach completed acknowledgment of receipt.)**
   e. ☐ **Certified or registered mail service.** By mailing to an address outside California (by first-class mail, postage prepaid, requiring a return receipt) copies to the person served. (CCP § 415.40) **(Attach signed return receipt or other evidence of actual delivery to the person served.)**
   f. ☐ Other  *(specify code section):*
      ☒ additional page is attached.

3. At the time of service I was at least 18 years of age and not a party to this action.
4. Fee for service: $
5. Person serving:
   a. ☐ California sheriff, marshal, or constable
   b. ☐ Registered California process server
   c. ☐ Employee or independent contractor of a registered California process server
   d. ☐ Not a registered California process server
   e. ☐ Exempt from registration under Bus. & Prof. Code § 22350(b)

   f. Name, address and telephone number and, if applicable, county of registration and number:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*(For California sheriff, marshal, or constable use only)*
I certify that the foregoing is true and correct.

Date:

Date:

▶ _____
(SIGNATURE)

▶ _____
(SIGNATURE)

**PROOF OF SERVICE**
**(Statement of Damages)**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address) | | FOR COURT USE ONLY |
|---|---|---|
| Elizabeth Green,Esq | SBN : 199634<br>KANTOR & KANTOR LLP<br>19839 Nordhoff St   Northridge, CA 91324<br><br>TELEPHONE NO.: (818) 886-2525 \| FAX NO. \| E-MAIL ADDRESS *(Optional):* egreen@kantorlaw.net<br>ATTORNEY FOR *(Name):* Plaintiff: J.G. | | |

| **Superior Court of California, County of San Francisco** |
|---|
| STREET ADDRESS: 400 McAllister Street |
| CITY AND ZIP CODE: San Francisco, CA 94102 |
| BRANCH NAME: |

| PLAINTIFF/PETITIONER: J.G. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: University of San Francisco Welfare Benefit Plan | CGC-22-601043 |

| **PROOF OF SERVICE** | Hearing Date: | Day | Hearing Time: | Dept: | Ref. No. or File No.: |
|---|---|---|---|---|---|
| | | | | | J.G. vs. University |

AT THE TIME OF SERVICE I WAS AT LEAST 18 YEARS OF AGE AND NOT A PARTY TO THIS ACTION
**I SERVED COPIES** OF THE FOLLOWING DOCUMENTS:

**STATEMENT OF DAMAGES**

PARTY SERVED: **University of San Francisco Welfare Benefit Plan**

PERSON SERVED: **Heysoll Alvarez - Human Resources- Authorized to Accept Service**

DATE & TIME: **12/8/2022**
**9:55 AM**

ADDRESS: **2130 Fulton St**
**San Francisco, CA 94117-1080**

PHYSICAL DESCRIPTION:  **Age: 25-30**     **Weight: 150 lbs**     **Hair: Black**
**Sex: Female**     **Height: 5'6**     **Eyes: Glasses**
**Skin: Hispanic**     **Marks:**

MANNER OF SERVICE:
 **Personal Service - By personally delivering copies.**

Fee for Service: **$ 171.10**

**N** County: **San Francisco**
Registration No.: **1009**
**Nationwide Legal, LLC Reg: 12-234648**
**1609 James M Wood Blvd.**
**Los Angeles, CA 90015**
**(213) 249-9999**
**Ref: J.G. vs. University**

I declare under penalty of perjury under the laws of the
The State of California that the foregoing information
contained in the return of service and statement of
service fees is true and correct and that this declaration
was executed on **December 08, 2022**.

Signature:_____

**Andy Esquer**

**PROOF OF SERVICE**

982(a)(23)[New July 1, 1987]

Order#: LA339081/General

# EXHIBIT C

1  James S. Brown (SBN 135810)
   Eden E. Anderson (SBN 233464)
2  **DUANE MORRIS LLP**
   Spear Tower
3  One Market Plaza, Suite 2200
   San Francisco, CA  94105-1127
4  Telephone: +1 415 957 3000
   Fax: +1 415 957 3001
5  E-mail:    jamesbrown@duanemorris.com
              eeanderson@duanemorris.com
6
   Attorneys for Defendant
7  UNIVERSITY OF SAN FRANCISCO WELFARE
   BENEFIT PLAN
8
9             SUPERIOR COURT OF THE STATE OF CALIFORNIA
10              FOR THE COUNTY OF SAN FRANCISCO

11 J.G.,                                 | Case No. CGC-22-601043
12              Plaintiff,               | **DEFENDANT UNIVERSITY OF SAN**
                                          **FRANCISCO WELFARE BENEFIT**
13        v.                             | **PLAN'S ANSWER TO PLAINTIFF'S**
                                          **FIRST AMENDED COMPLAINT**
14 UNIVERSITY OF SAN FRANCISCO WELFARE
   BENEFIT PLAN,
15
                Defendant.              | Complaint Filed:    August 1, 2022
16
17
18        Defendant University of San Francisco Welfare Benefit Plan ("Defendant" or the "Plan")

19 hereby answers and responds to the First Amended Complaint ("FAC") of Plaintiff J.G. ("Plaintiff"),

20 as follows:

21                         **<u>GENERAL DENIAL</u>**

22        Pursuant to California Code of Civil Procedure § 431.30, the Plan denies generally and

23 specifically each and every allegation, statement, matter and each purported cause of action

24 contained in the FAC and, without limiting the generality of the foregoing, denies generally and

25 specifically that Plaintiff has been damaged in any way by reason of any acts or omissions of the

26 Plan.

27 / / /

28 / / /
   DM2\17035136.1
   _____
        DEFENDANT UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN'S
                    ANSWER TO FIRST AMENDED COMPLAINT

## SEPARATE DEFENSES

In further answer to the FAC, the Plan alleges the following additional defenses.  In asserting these defenses, the Plan does not assume the burden of proof as to matters that, pursuant to law, are Plaintiff's burden to prove.

### FIRST SEPARATE DEFENSE

The FAC, as a whole, and each cause of action attempted to be stated therein, fails to state facts sufficient to constitute a cause of action against the Plan.

### SECOND SEPARATE DEFENSE

To the extent Plaintiff failed to fully and/or timely exhaust his administrative remedies and/or failed to comply with any procedural prerequisites prior to bringing his claims, the Court lacks subject matter jurisdiction over such claims or such claims are otherwise barred.

### THIRD SEPARATE DEFENSE

Defendant has performed all obligations required by the Plan.  Plaintiff is not entitled to the relief alleged in the FAC.

### FOURTH SEPARATE DEFENSE

Plaintiff's claims are barred or limited by his failure to comply with the Plan's terms, conditions, limitations, and exclusions.

### FIFTH SEPARATE DEFENSE

To the extent Plaintiff seeks to pursue a claim under California's Mental Health Parity Act or alleges that the terms of the Plan violate state law, such a claim is preempted by ERISA, 29 U.S.C. § 1144(a).

### SIXTH SEPARATE DEFENSE

To the extent Plaintiff seeks to pursue a claim under California's Mental Health Parity Act or alleges that the terms of the Plan violate state law, such a claim is barred to extent the benefits sought relate to services that were provided out of state.

### SEVENTH SEPARATE DEFENSE

To the extent Defendant engaged in any of the acts complained of, such acts were excused, justified, or privileged.

DM2\17035136.1

2

DEFENDANT UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN'S
ANSWER TO FIRST AMENDED COMPLAINT

**EIGHTH SEPARATE DEFENSE**

Plaintiff's claim for equitable relief fails because Plaintiff has an adequate remedy at law.

**NINTH SEPARATE DEFENSE**

Plaintiff's claims are barred by the applicable statute of limitations and/or the limitations period set forth in the Plan.

**TENTH SEPARATE DEFENSE**

Plaintiff's claims are barred to the extent he lacks standing to pursue the causes of action alleged.

**ELEVENTH SEPARATE DEFENSE**

Plaintiff's FAC and each cause of action alleged therein, is barred by the doctrines of laches, waiver, and/or estoppel.

**TWELFTH SEPARATE DEFENSE**

Plaintiff is not entitled to recover attorneys' fees and costs.

**THIRTEENTH SEPARATE DEFENSE**

Plaintiff's FAC, and each cause of action alleged therein, is barred because Plaintiff has failed to join all indispensable parties.

**FOURTEENTH SEPARATE DEFENSE**

Plaintiff has failed to mitigate his alleged damages if any, and any recovery must be diminished or barred by reason thereof.

**ADDITIONAL RESPONSE**

The Plan presently has insufficient information upon which to form a belief as to whether it may have additional, as yet unstated, defenses beyond those listed above.  The Plan therefore reserves the right to assert additional defenses in the event discovery indicates additional defenses are appropriate.

**PRAYER**

WHEREFORE, the Plan prays for judgment as follows:

1.      That Plaintiff take nothing by virtue of the FAC herein;

2.      That Plaintiff's FAC be dismissed, with prejudice;

1       3.      That the Plan be awarded its reasonable attorneys' fees and costs according to proof;

2       4.      For such other and further relied as this Court may deem just and proper.

4  Dated:  January 19, 2023              **DUANE MORRIS LLP**

By: _____
James S. Brown
Eden E. Anderson

Attorneys for Defendant
UNIVERSITY OF SAN FRANCISCO WELFARE
BENEFIT PLAN

DM2\17035136.1

4

DEFENDANT UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN'S
ANSWER TO FIRST AMENDED COMPLAINT