UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.G.,<br><br>        Plaintiff,<br><br>    v.<br><br>UNIVERSITY OF SAN FRANCISCO WELFARE BENEFIT PLAN,<br><br>        Defendant. | Case No. 23-cv-00299-JSC<br><br>**ORDER RE: DEFENDANT'S MOTION TO DISMISS OR FOR JUDGMENT, OR PARTIAL JUDGMENT, ON THE PLEADINGS**<br><br>Re: Dkt. No. 20 |

    Plaintiff J.G. sued Defendant University of San Francisco Welfare Benefit Plan for denial of health plan benefits under the Employee Retirement Income Security Act of 1974 (ERISA) and for equitable relief under 29 U.S.C. § 1132(a)(1)(B). (Dkt. No. 1.)[1] Defendant moves to dismiss or for judgment on the pleadings. (Dkt. No. 20.) Defendant argues Plaintiff J.G. lacks Article III and statutory standing, that his Federal Health Parity and Addiction Equity Act claim fails, and that an abuse of discretion rather than *de novo* standard of review applies to the ERISA claim. At oral argument on August 24, 2023, the parties agreed to substitute K.G. as the plaintiff. The caption of this Order thus reflects the plaintiff is K.G. The parties further agreed the Court could consider the merits of Defendant's motion to dismiss as there is no dispute K.G. has Article III and constitutional standing.

## COMPLAINT ALLEGATIONS

    K.G. has a long history of mental illness and emotional disturbance, and suffers from autism spectrum disorder, generalized anxiety disorder, major depressive disorder, and neurodevelopmental disorders. (Dkt. No. 1 at 50-51 ¶¶ 7-10.) Around age thirteen, when his

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

anxiety and depression made it difficult for him to attend school and complete schoolwork, K.G. was admitted to multiple treatment centers. (*Id*. at 51 ¶¶ 11-12.) Despite treatment, K.G.'s mental health worsened. (*Id*. ¶ 13.) At the end of his 12th grade year, K.G. discontinued his medication and threatened suicide during an outburst, for which he spent 17 days at Stanford Hospital. (*Id*. ¶ 14.) Upon discharge, K.G. was admitted to a transitional living treatment center where he attempted suicide. (*Id*. ¶ 15.) After the suicide attempt, K.G. was admitted to McKay Dee Hospital for inpatient psychiatric hospitalization. (*Id*. ¶ 16.) Following his hospitalization, on July 14, 2020, 18-year-old K.G. was admitted to Bridge House residential treatment center, where he continued to express suicidal ideations and was found in possession of a homemade noose. (*Id*. at 52 ¶¶ 17-20.) K.G.'s Bridge House treatment providers recommended transfer to two programs; of the two, only Innercept Treatment Center was willing to accept K.G. (*Id*. ¶ 21.) K.G. was discharged from Bridge House and admitted to Innercept on October 20, 2020. (*Id*. at 52 ¶ 22, 54 ¶ 30.) K.G. was discharged from Innercept on July 15, 2022. (*Id*. at 54 ¶ 34.)

      J.G. is K.G.'s parent. (Dkt. No. 1 at 50 ¶ 4.) J.G. and his dependents, including K.G., were insured under the University of San Francisco Welfare Benefit Plan, a health care service plan administered by Anthem Blue Cross Life and Health Insurance Company. (*Id*. ¶¶ 4-5.) On October 23, 2020, Anthem denied benefits for K.G.'s residential treatment at Innercept, saying the "service is excluded or not covered under your plan benefits" because the Plan requires residential treatment providers have accreditation with one of four national organizations. (*Id*. at 54 ¶ 35.) Though Anthem approved K.G.'s benefits for his first two weeks of residential treatment at Bridge House, Anthem denied further benefits in a February 9, 2021 letter also claiming the Plan requires residential treatments have accreditation with one of four national organizations. (*Id*. at 52 ¶ 24.) On February 24, 2021, Plaintiff appealed Anthem's denial, challenging the Plan's accreditation requirement as violative of the Federal Mental Health Parity and Addiction Equity Act on the grounds the Plan did not enforce the same accreditation requirement for treatment of physical conditions at skilled nursing facilities. (*Id*. at 53 ¶ 25.) On May 28, 2021, Anthem denied Plaintiff's appeal, saying Bridge House was a Wilderness Treatment Center not covered under Plaintiff's benefit plan. (*Id*. ¶ 26.) On June 7, 2021, Anthem amended its May 28, 2021 denial

letter to say Bridge House was not properly accredited as a residential treatment center. (*Id*. ¶ 27.) On June 22, 2021, Anthem denied the first level appeal of the Innercept claims, saying K.G.'s residential treatment was not medically necessary. (*Id*. at 55 ¶ 37.) On August 6, 2021, Anthem denied the second level appeal of the Bridge House claims on the same accreditation grounds. (*Id*. ¶ 29.) On June 28, 2022, a second level appeal of the Innercept claims demonstrating the medical necessity of K.G.'s treatment at Innercept was submitted. (*Id*. ¶ 38.) Anthem has not issued a decision on the second level Innercept appeal. (*Id*. ¶ 39.)

K.G. sues Defendant for denial of health plan benefits under 29 U.S.C. §§ 1132(a), (e), (f), and (g) of the Employee Retirement Income Security Act of 1974 (ERISA) and seeks equitable relief under 29 U.S.C. § 1132(a)(1)(B). Defendant now seeks dismissal or judgment, or partial judgment, on the pleadings pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(c). The motion to dismiss on statutory and constitutional grounds is moot in light of the substitution of K.G. as the named plaintiff.

## DISCUSSION

### I. Motion to Dismiss the Health Parity Act Claim

The First Amended Complaint alleges Defendant's accreditation requirement for residential treatment centers violates the Parity Act because Defendant does not require accreditation of skilled nursing facilities. (Dkt. No. 1 at 53-55 ¶¶ 25, 36.) Defendant argues Plaintiff fails to allege a plausible disparity between the Plan's requirements for skilled nursing facilities and residential treatment centers and thus the claim must be dismissed under Federal Rule of Civil Procedure 12(c).

In analyzing a Rule 12(c) motion, the Court applies the same standards as apply under Federal Rule of Civil Procedure 12(b)(6). *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). For Plaintiff's Parity Act claim to survive, the complaint's factual allegations must raise a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007). Though the Court must accept the complaint's factual allegations as true, conclusory assertions are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the plaintiff pleads enough factual content to justify the

3

reasonable inference the defendant is liable for the misconduct alleged. *Id.*

### a. The Parity Act

Under the Parity Act, health plans providing medical and surgical benefits as well as mental health and substance abuse disorder benefits must not impose more restrictions on the latter than the former. 29 U.S.C. § 1185(a)(3)(A); *Danny P. v. Cath. Health Initiatives*, 891 F.3d 1155, 1157 (9th Cir. 2018). The Parity Act states:

> In the case of a group health plan (or health insurance coverage offered in connection with such a plan) that provides both medical and surgical benefits and mental health or substance use disorder benefits, such plan or coverage shall ensure that--
>
> (i) the financial requirements applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant financial requirements applied to substantially all medical and surgical benefits covered by the plan (or coverage), and there are no separate cost sharing requirements that are applicable only with respect to mental health or substance use disorder benefits; and
>
> (ii) the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.

29 U.S.C. § 1185(a)(3)(A). The statute's language unambiguously directs benefits and treatment limitations for mental health shall be no more restrictive than those for physical health. *Danny P.*, 891 F.3d at 1158. More specifically, the Parity Act requires:

> A group health plan (or health insurance coverage) may not impose a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan (or health insurance coverage) as written and in operation, any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits in the classification.

29 C.F.R. § 2590.712(c)(4)(i). Nonquantitative treatment limitations include "medical management standards limiting or excluding benefits based on medical necessity or medical appropriateness," "[s]tandards for provider admission to participate in a network, including

4

1  reimbursement rates," and any criteria limiting the scope or duration of benefits for services
2  provided under a plan.  29 C.F.R. § 2590.712(c)(4)(ii).
3        Treatment limitations are compared across "classifications of benefits," requiring
4  consistent treatment of mental and physical health within each classification.  29 C.F.R. §
5  2590.712(c)(2)(ii)(A).  Residential treatment centers and skilled nursing facilities exist within the
6  same classification, and thus the treatment limitations applied to each are comparable under the
7  Parity Act.  Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and
8  Addiction Equity Act of 2008; Technical Amendment to External Review for Multi-State Plan
9  Program, 78 FR 68240-01 ("For example, if a plan or issuer classifies care in skilled nursing
10 facilities or rehabilitation hospitals as inpatient benefits, then the plan or issuer must likewise treat
11 any covered care in residential treatment facilities for mental health or substance user disorders as
12 an inpatient benefit."); *see, e.g.*, *Danny P. v. Cath. Health Initiatives*, 891 F.3d 1155, 1158 (9th
13 Cir. 2018) ("[A]s we read, interpret, and fill any gap in the language of the Parity Act, we are
14 satisfied that it precludes the Plan from deciding, as the Plan does, that it will provide room and
15 board reimbursement at licensed skilled nursing facilities for medical and surgical patients, but
16 will not provide room and board reimbursement at residential treatment facilities for mental health
17 patients.").

18        **b. The Plan's Plausible Violation of the Parity Act**

19        Violations of the Parity Act can arise from a health plan "as written and in operation."  29
20  C.F.R. § 2590.712(c)(4)(i).  To bring a Parity Act claim, K.G. must show Defendant imposes a
21  discriminatory financial requirement, quantitative treatment limitation, or nonquantitative
22  treatment limitation on mental health or substance use disorder benefits.  *Smith v. United*
23  *Healthcare Ins. Co.*, No. 18-CV-06336-HSG, 2019 WL 3238918, at *4 (N.D. Cal. July 18, 2019).
24  "[I]t is enough to plausibly plead that there is a categorical exclusion for mental health benefits but
25  not for medical benefits."  *Id*. at *6.
26        Defendant repeatedly denied benefits to K.G. for residential treatment at Bridge House and
27  Innercept on the grounds the Plan requires residential treatment centers have accreditation with
28  one of four national organizations.  (Dkt. No. 1 at 52-54 ¶¶ 24, 27, 35.)  K.G. alleges the

accreditation requirement violates the Parity Act because it is not required of skilled nursing facilities. (Dkt. No. 1 at 53-55 ¶¶ 25, 36.) The Plan requires residential treatment centers "be licensed according to state and local laws" and "fully accredited by The Joint Commission (TJC), the Commission on Accreditation of Rehabilitation Facilities (CARF), the National Integrated Accreditation for Healthcare Organizations (NIAHO), or the Council on Accreditation (COA)." (Dkt. No. 20-2 at 164, 172.) The Plan requires skilled nursing facilities "be licensed according to the state and local laws and be recognized as a skilled nursing facility under Medicare." (*Id*. at 173.) Unlike residential treatment centers, the Plan does not require skilled nursing facilities to be accredited by one of four accreditation agencies. (Dkt. No. 20-2 at 164, 172-73.). As alleged, the Plan categorically denied mental health benefits to Plaintiff by discriminatorily imposing a treatment limitation not applied to physical health benefits. (Dkt. No. 1 at 52-55 ¶¶ 24-25, 27, 35-36.) Plaintiff has thus sufficiently stated a Parity Act claim by alleging a disparity between limitations applied to mental and physical health treatments within the same classification. *Smith*, 2019 WL 3238918, at *6 ("Here, Plaintiff has pled that only mental health services—and not medical or surgical services—are subject to the reimbursement reductions. Plaintiff's allegations of categorical disparate treatment are sufficient to state a claim for a Parity Act violation.").

Defendant argues the accreditation requirement for residential treatment centers is no more onerous than the Medicare recognition requirement for skilled nursing facilities. Whether a material distinction exists between these requirements cannot be answered as a matter of law and is instead a factual question requiring discovery. The requirements are at least facially different in that one demands accreditation from an approved national accreditation agency and the other demands recognition under Medicare. The Court cannot conclude as a matter of law that "recognition under Medicare" is just as restrictive as accreditation by one of the four identified entities because the pleadings do not establish what "recognition under Medicare" means or even what is required for accreditation by the four entities. Drawing all reasonable inferences in K.G.'s favor, accreditation by a specific entity is more restrictive than mere "recognition," whatever that means.

The nonprecedential authority Defendant cites to the contrary is inapposite. The plan at

issue in *J.W.* required residential treatment centers and skilled nursing facilities to be licensed by the state *or* approved by a national organization or program. *J.W. v. Bluecross Blueshield of Texas*, No. 1:21-CV-21, 2022 WL 2905657, at *6 (D. Utah July 22, 2022) ("In each case, the facility must thus be licensed by the State or approved by a national organization or program. Plaintiffs do not allege that eligibility for Medicare is meaningfully more lenient than accreditation by a national organization.") Thus, coverage was the same for mental health care and physical care: the facility need only be licensed by the state. Here, in contrast, the Plan requires accreditation or recognition on top of state licensure for both residential treatment centers and skilled nursing facilities. (Dkt. No. 20-2 at 164, 172-73.) Additionally, the accreditation requirement in *J.W.* was not as specific as that which the Plan seeks to impose here. In *J.W.*, the plan accepted accreditation from "a national organization" for residential treatment centers. 2022 WL 2905657, at *6. Here, the Plan accepts accreditation for residential treatment centers only from one of four national organizations. In any event, *J.W.*'s reasoning fails to persuade the Court the accreditation requirement at issue here is no more restrictive than Medicare recognition as a matter of law.

Defendant's invocation of *James C.* is likewise unhelpful for two reasons. *James C. v. Anthem Blue Cross & Blue Shield*, No. 2:19-CV-38, 2021 WL 2532905 (D. Utah June 21, 2021), *appeal dismissed* (Nov. 30, 2021). First and fatally, the court determined whether a meaningful difference constituting a disparate treatment limitation existed on a motion for summary judgment. *Id*. at *19. This undermines Defendant's insistence discovery is unnecessary to determine whether the requirements applied to residential treatment facilities are more stringent than those applied to skilled nursing facilities. Second, the accreditation of the residential treatment facility in *James C.* was "immaterial to Anthem's decision to deny coverage." *Id*. Indeed, it was ambiguous under the health plan "whether such accreditation was actually required." *Id*. Here, Defendant unambiguously requires accreditation as a prerequisite for coverage and repeatedly denied coverage to K.G. based on the accreditation of Bridge House and Innercept, making accreditation of residential treatment facilities directly material to K.G.'s case. (Dkt. No. 1 at 52-54 ¶¶ 24, 27, 35).

At this stage in these proceedings, and on this record, whether the accreditation of residential treatment facilities is comparable to, and applied no more stringently than, the Medicare recognition requirement is a factual question the Court cannot resolve on the pleadings. 29 C.F.R. § 2590.712(c)(4)(i); *see, e.g.*, *M. v. United Behav. Health*, 2020 WL 5107634, at *4 (D. Utah Aug. 31, 2020) ("[D]iscovery is necessary to evaluate whether the Plan treats mental health and substance abuse claims differently than medical/surgical claims."). Accordingly, Defendant's 12(c) motion for judgment on the pleadings is DENIED.

## II. Standard of Review

After Innercept gained accreditation, Anthem denied Plaintiff's Innercept claims from March 20, 2021, to June 15, 2021, on the grounds K.G.'s residential treatment was not medically necessary. (Dkt. No. 1 at 55 ¶ 38.) Defendant requests the Court review Anthem's denials of Plaintiff's Innercept claims after March 20, 2021, for abuse of discretion.

As discussed at oral argument, the Court requires further briefing on this issue. K.G. may file a further opposition on or before September 29, 2023. Defendant's further reply must be filed on or before October 13, 2023. K.G. may file a further response, not to exceed five pages, on or before October 20, 2023. The Court will take the issue under submission at that time or will advise the parties of a further oral argument date.

## CONCLUSION

Defendant's 12(c) motion for judgment on the pleadings of Plaintiff's Parity Act claim is DENIED because the Court cannot resolve, on these pleadings and at this stage, whether the accreditation of residential treatment facilities is comparable to "Medicare recognition" for skilled nursing facilities.

This Order disposes of Docket No. 20.

**IT IS SO ORDERED.**

Dated: August 28, 2023

JACQUELINE SCOTT CORLEY
United States District Judge