1

2

3

4                           UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6

7    K.G.,                                    Case No.  23-cv-00299-JSC

8                    Plaintiff,

9            v.                               **ORDER RE: STANDARD OF REVIEW**

                                              Re: Dkt. No. 24
10   UNIVERSITY OF SAN FRANCISCO
     WELFARE BENEFIT PLAN,
11
                    Defendant.
12

13          Plaintiff K.G. sues Defendant University of San Francisco Welfare Benefit Plan regarding

14   denial of health plan benefits under the Federal Health Parity and Addiction Equity Act and

15   Employee Retirement Income Security Act of 1974 (ERISA).  (Dkt. No. 1 at 49-57.)[1]  After

16   asking Defendant to address the applicable standard of review for Anthem's denials of Plaintiff's

17   benefits for lack of medical necessity in Defendant's Rule 12(c) motion, the Court denied the

18   motion because the Court could not consider the evidence submitted under Rule 12(c).  (Dkt. No.

19   29.)  At the case management conference on February 29, 2024, the parties agreed to convert

20   Defendant's 12(c) motion to a motion for summary judgment without further briefing.  So, before

21   the Court is Defendant's motion for summary judgment on the applicable standard of review.

22   (Dkt. No. 20.)  Having reviewed the parties' submissions, the Court concludes a *de novo* standard

23   of review applies to Anthem's denials of Plaintiff's Innercept claims after March 20, 2021.

24   Defendant fails to show the Plan warrants departure from the default *de novo* standard of review

25   because Defendant fails to demonstrate the Plan's written instrument unambiguously delegates

26   Anthem discretionary authority to administer the Plan.

27   ────────────────────

28   [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.

*United States District Court*
*Northern District of California*

1

**BACKGROUND**

2   K.G. has a long history of mental illness and emotional disturbance, and suffers from

3   autism spectrum disorder, generalized anxiety disorder, major depressive disorder, and

4   neurodevelopmental disorders.  (Dkt. No. 1 at 50-51 ¶¶ 7-10.)  Around age 13, when his anxiety

5   and depression made it difficult for him to attend school and complete schoolwork, K.G. was

6   admitted to multiple treatment centers.  (*Id*. at 51 ¶¶ 11-12.)  Despite treatment, K.G.'s mental

7   health worsened.  (*Id*. ¶ 13.)  At the end of his 12th grade year, K.G. discontinued his medication

8   and threatened suicide during an outburst, for which he spent 17 days at Stanford Hospital.  (*Id*. ¶

9   14.)  Upon discharge, K.G. was admitted to a transitional living treatment center where he

10  attempted suicide.  (*Id*. ¶ 15.)  After the suicide attempt, K.G. was admitted to McKay Dee

11  Hospital for inpatient psychiatric hospitalization.  (*Id*. ¶ 16.)  Following his hospitalization, on

12  July 14, 2020, 18-year-old K.G. was admitted to Bridge House residential treatment center, where

13  he continued to express suicidal ideations and was found in possession of a homemade noose.  (*Id*.

14  at 52 ¶¶ 17-20.)  K.G.'s Bridge House treatment providers recommended transfer to two programs;

15  of the two, only Innercept Treatment Center (Innercept) was willing to accept K.G.  (*Id*. ¶ 21.)

16  K.G. was admitted to Innercept for residential treatment on October 20, 2020.  (*Id*. at 54 ¶

17  30.)  K.G. was discharged from Innercept on July 15, 2022.  (*Id*. at 54 ¶ 34.)  On June 22, 2021,

18  Anthem denied benefits for K.G.'s residential treatment at Innercept from March 20, 2021 to June

19  15, 2021 on the grounds K.G.'s residential treatment was not medically necessary.  (*Id*. at 55 ¶

20  37.)  Though Anthem's denial acknowledged K.G. went to residential treatment because he was at

21  risk of harming himself, Anthem claimed K.G. did not have thoughts of harming himself, had not

22  tried to harm himself before, and did not have means to carry out self-harm.  (*Id*.)

23  **DISCUSSION**

24  Under Federal Rule of Civil Procedure 56, summary judgment is proper if Defendant

25  shows there is no genuine dispute of material fact and Defendant is entitled to judgment as a

26  matter of law.  In ruling on a motion for partial summary judgment, the Court must "view the

27  evidence presented through the prism of the substantive evidentiary burden."  *Anderson v. Liberty*

28  *Lobby, Inc.*, 477 U.S. 242, 254 (1986).  The evidence of the non-movant is to be believed, and all

United States District Court
Northern District of California

1 | justifiable inferences are to be drawn in the non-movant's favor.  *Id*. at 255.

2 |    "A denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo*

3 | standard unless the benefit plan gives the administrator or fiduciary discretionary authority to

4 | determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber*

5 | *Co. v. Bruch*, 489 U.S. 101, 115 (1989).  So, *de novo* is the default standard of review.  *Abatie v.*

6 | *Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006).  "[F]or a plan to alter the standard

7 | of review from the default of de novo to the more lenient abuse of discretion, the plan must

8 | unambiguously provide discretion to the administrator."  *Id*.  A document that is not itself part of

9 | the Plan cannot confer discretionary power on Anthem.  *CIGNA Corp. v. Amara*, 563 U.S. 421,

10 | 437-38 (2011).  Defendant bears the burden of proving the Plan unambiguously delegates

11 | discretionary authority to Anthem.  *Prichard v. Metro. Life Ins. Co.*, 783 F.3d 1166, 1169 (9th Cir.

12 | 2015).  Ambiguities are construed in favor of the insured.  *Kearney v. Standard Ins. Co.*, 175 F.3d

13 | 1084, 1090 (9th Cir. 1999).

14 |    Defendant requests the Court review Anthem's denials of Plaintiff's Innercept claims after

15 | March 20, 2021, for abuse of discretion on the grounds Defendant unambiguously delegated

16 | discretionary authority to Anthem to administer Plaintiff's claims.  Defendant offers four

17 | documents to argue the Plan properly conferred discretionary authority on Anthem: the Master

18 | Plan Document/Master Summary Plan Description (Master Document), 2020 Benefit Booklet,

19 | 2021 Benefit Booklet, and Administrative Services Agreement.

20 | **A. 2021 Benefit Booklet**

21 |    Defendant argues the 2021 Benefit Booklet is a Plan document delegating discretionary

22 | authority to Anthem.  (Dkt. No. 27 at 5; *see also id.* at 15 ("The [Administrative Services

23 | Agreement] Is A Plan Document That <u>Also</u> Delegated Fiduciary Discretion to Anthem").  But

24 | Defendant has failed to establish the 2021 Benefit Booklet was in effect during or after March

25 | 2021, applied to Plaintiff's claims, or founded Anthem's denials of Plaintiff's Innercept claims.

26 | Indeed, Anthem denied Plaintiff's benefits based on the 2020 Benefit Booklet.  (Dkt. Nos. 20-2

27 | (2020 Benefit Booklet attached to Defendant's Rule 12(c) motion), 24 at 3-8 (denying Defendant's

28 | 12(c) motion as to Plaintiff's Parity Act claim based on the 2020 Benefit Booklet), 26-2 (March

1    2022 letter from Defendant's General Counsel to Plaintiff confirming denial of Plaintiff's health

2    benefits under the terms of the 2020 Benefit Booklet)).

3           Defendant insists the 2021 Benefit Booklet "is provided to all participants in the PPO

4    Plan." (Dkt. No. 22-1 ¶ 5.)  But when was it provided?  When did it go into effect?  This lone

5    statement is insufficient to demonstrate the 2021 Benefit Booklet's relevance to this action,

6    especially because Defendant's General Counsel cited only the 2020 Benefit Booklet to say

7    Defendant "must rely upon Anthem for all claims decisions" in a letter sent on March 29, 2022.

8    (Dkt. No. 26-2.)  So, Defendant fails to show the 2021 Benefit Booklet should be considered in

9    deciding the proper standard of review.

10          Defendant's arguments to the contrary are unpersuasive.  Without citation or explanation,

11   Defendant claims the 2021 Benefit Booklet's terms "*form the basis for* Plaintiff's claims that *Plan*

12   *terms* violate the Parity Act." (Dkt. No. 27 at 5.)  Incorrect.  Nothing in the complaint references

13   the terms of the 2021 Benefit Booklet.  In Defendant's Rule 12(c) challenge to Plaintiff's Parity

14   Act claim, Defendant relied only on the 2020 Benefit Booklet's terms.  (Dkt. No. 20 at 9

15   ("Because the Plan's terms are referenced in the FAC and form the basis for the claims alleged,

16   Plan terms, **as set forth in the Plan's 2020 PPO Plan Benefit Booklet** ('Benefit Booklet') are

17   properly incorporated by reference into the FAC and/or a proper subject of judicial notice."

18   (emphasis added).)  The Court, in turn, evaluated and denied Defendant's 12(c) challenge to

19   Plaintiff's Parity Act claim based exclusively on the 2020 Benefit Booklet.  (Dkt. No. 24 at 3-8.)

20   So, Defendant fails to establish the 2021 Benefit Booklet forms the basis of Plaintiff's claims.

21       **B.  Plan Documents**

22          The next question is whether the Master Document, 2020 Benefit Booklet, and/or

23   Administrative Services Agreement are Plan documents that delegate discretionary authority to

24   Anthem.  *Abatie*, 458 F.3d at 963 ("The essential first step of the analysis, then, is to examine

25   whether the terms of the ERISA plan unambiguously grant discretion to the administrator.

26   Accordingly, we first turn to the text of the plan."); *Kearney*, 175 F.3d at 1089-90 ("Thus our task

27   now is to examine the instrument to determine whether it confers discretion on [the defendant] to

28   decide whether a claimant is disabled.").

United States District Court
Northern District of California

4

1

**1.  Master Document/2020 Benefit Booklet**

2

**i.  Written Instrument**

3        ERISA requires the Plan be established and maintained pursuant to a written instrument

4   naming one or more fiduciaries who jointly or severally shall have authority to control and

5   manage the operation and administration of the Plan.  29 U.S.C. § 1102.  ERISA requires a written

6   plan so "every employee may, *on examining the plan documents*, determine exactly what his

7   rights and obligations are under the plan."  *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73,

8   83 (1995).  The Master Document qualifies as the Plan's written instrument if it meets the four §

9   1102(b) criteria.  *Mull for Mull v. Motion Picture Indus. Health Plan*, 865 F.3d 1207, 1209 (9th

10  Cir. 2017).  Section 1102(b) requires the Plan's written instrument include:

11                 (1) a procedure for establishing and carrying out a funding policy,
                  (2) the procedure for the allocation of responsibilities for operation
12                and administration of the plan,
                  (3) a procedure for amending the plan and the identity of persons with
13                the authority to do so, and
                  (4) the basis on which payments are made to and from the plan.
14

15  *Id*.; *see* 29 U.S.C. § 1102(b).  The Master Document generally describes procedures for

16  establishing and carrying out a funding policy, (Dkt. No. 22-2 at 5-6, 18-21), the allocation of

17  responsibilities for operation and administration of the Plan, (*id*. at 11-12), and amending the Plan.

18  *Id*. at 13.  The Master Document thus satisfies the first three requirements of § 1102(b).  However,

19  the document fails to include the basis on which payments are made to and from the Plan.  So,

20  because the Master Document fails to satisfy the last requirement of § 1102(b), the Master

21  Document alone cannot qualify as the Plan's written instrument.  *Mull for Mull*, 865 F.3d at 1209-

22  1210; *see also Warmenhoven v. NetApp, Inc.*, 13 F.4th 717, 725 n.1 (9th Cir. 2021) (explaining

23  *Mull for Mull* held "because the trust agreement met only three of the four § 1102(b) criteria, it

24  could not qualify on its own as the plan's written instrument.")

25        The 2020 Benefit Booklet "supplies, in great detail, the basis for payments."  *Mull for

26  Mull*, 865 F.3d at 1209. (Dkt. No. 20-2 at 31-79.)  Because the 2020 Benefit Booklet satisfies §

27  1102(b)'s fourth criterion, the written instrument constituting the Plan is comprised of two

28  documents: the Master Document and 2020 Benefit Booklet.  *Mull for Mull*, 865 F.3d at 1209; *see*

*United States District Court*
*Northern District of California*

1  *also Warmenhoven v. NetApp, Inc.*, 13 F.4th at 725 ("[B]ecause the [summary plan description]

2  met the remaining criterion, we held that the two documents together constituted a plan, and

3  therefore that the [summary plan description's] recoupment provisions were enforceable."

4  (cleaned up)).

### ii.  Delegation of Discretionary Authority

#### 1.  Master Document

The Master Document states:

> The administration of the Plan is under the supervision of the Plan Administrator. The Plan Administrator is a named fiduciary within the meaning of ERISA § 402 and has full discretionary authority to administer the Plan, to interpret the Plan, and to determine eligibility for participation and for benefits under the terms of the Plan. However, insurers and parties that have entered into administrative service agreements (Third Party Service Providers or TPAs) assume sole responsibility for their performance under applicable policies or administrative service agreements and, under ERISA, may be fiduciaries with respect to their performance.

(Dkt. No. 22-2 at 11-12.) The Master Document further provides:

> The Plan Administrator may delegate any of these administrative duties among one or more persons or entities, provided that such delegation is in writing, expressly identifies the delegate(s) and expressly describes the scope of the delegated responsibility. The Plan Administrator has the discretionary authority to interpret the Plan in order to make eligibility and benefit determinations as it may determine in its sole discretion. The Plan Administrator has the discretionary authority to make factual determinations as to whether any individual is entitled to receive any benefits under the Plan.

(*Id.* at 12.)

The only plan administrator named in the Master Document is the University of San Francisco. (*Id.* at 6.) So, the Master Document fails to unambiguously delegate Anthem discretion to determine eligibility for Plan benefits or interpret Plan terms.

#### 2.  2020 Benefit Booklet

The 2020 Benefit Booklet names Anthem Blue Cross as the claims administrator. (Dkt. No. 20-2 at 5, 161.) The Booklet explains:

> The claims administrator has processes to review claims before and after payment to detect fraud, waste, abuse and other inappropriate activity. Members seeking services from non-participating providers

6

1   could be balance billed by the non-participating provider for those
2   services that are determined to be not payable as a result of these
    review processes and meets the criteria set forth in any applicable
3   state regulations adopted pursuant to state law.  A claim may also be
    determined to be not payable due to a provider's failure to submit
4   medical records with the claims that are under review in these
    processes.

5   (*Id*. at 12.)  The Booklet also explains the procedure the claims administrator will satisfy for

6   appeals of denied claims.  (*Id*. at 174-180.)  However, the 2020 Benefit Booklet "simply does not

7   clearly indicate that [Anthem] has discretion to grant or deny benefits."  *Feibusch v. Integrated*

8   *Device Tech., Inc. Emp. Ben. Plan*, 463 F.3d 880, 884 (9th Cir. 2006).  So, the 2020 Benefit

9   Booklet does not merit deferential judicial review.

10                                          * * *

11        The Ninth Circuit insists the text of a plan be unambiguous as to the delegation of

12   discretionary authority to grant or deny benefits.  *Ingram v. Martin Marietta Long Term Disability*

13   *Income Plan for Salaried Emps. of Transferred GE Operations*, 244 F.3d 1109, 1113 (9th Cir.

14   2001); *see Sandy v. Reliance Standard Life Ins. Co.*, 222 F.3d 1202, 1207 (9th Cir. 2000)

15   ("Neither the parties nor the courts should have to divine whether discretion is conferred.  It either

16   is, in so many words, or it isn't.").  The Plan's written instrument fails to warrant departure from

17   the default *de novo* review for Anthem's denial of Plaintiff's Innercept claims after March 20,

18   2021, because the Plan's written instrument fails to unambiguously delegate Anthem discretionary

19   authority to administer the Plan.

20        **2.  Administrative Services Agreement**

21        Defendant also insists the Administrative Services Agreement is a Plan document that

22   confers discretionary authority on Anthem.  Only documents providing information as to where a

23   plan participant stands with respect to the plan "could qualify as governing documents with which

24   a plan administrator must comply in awarding benefits under § 1104(a)(1)(D)."  *Becker v.*

25   *Williams*, 777 F.3d 1035, 1039 (9th Cir. 2015); *see* 29 U.S.C. § 1104(a)(1)(D) ("a fiduciary shall

26   discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries

27   and-- . . . in accordance with the documents and instruments governing the plan . . . .").  The

28   Administrative Services Agreement may constitute or be integrated into a formal Plan document

7

1    "so long as the [Administrative Services Agreement] neither adds to nor contradicts the terms of

2    existing Plan documents." *Prichard*, 783 F.3d at 1170.  Though contracts between insurers and

3    employers establishing insurance plans are generally not plan documents, the Administrative

4    Services Agreement may provide elements of the Plan by "setting out rules under which

5    beneficiaries will be entitled to care." *Pegram v. Herdrich*, 530 U.S. 211, 223 (2000).

6                          **i.  Document Comprising the Plan's Written Instrument**

7         Defendant asserts the Administrative Services Agreement is a Plan document under §

8    1102(b) because "the [Administrative Services Agreement] specifies how Anthem makes

9    payments under the Plan, [] how [the University of San Francisco] funds those payments," and

10   "sets forth a procedure whereby Plan terms, as set forth in the comprehensive Benefit Booklet, can

11   be amended." (Dkt. No. 27 at 16.)  Defendant further claims "[t]hese are requisite features of an

12   ERISA plan instrument not addressed in the Master [Document] or Benefit Booklet," so the Plan's

13   written instrument must also be comprised of the Administrative Services Agreement.  (*Id*. at 16-

14   17.)  Not so.

15        As explained above, the Master Document and 2020 Benefit Booklet together satisfy §

16   1102(b)'s criteria and thus together constitute the Plan's written instrument.  The Administrative

17   Services Agreement's explanation of the claims payment method struck between the University of

18   San Francisco and Anthem fails to qualify the Administrative Services Agreement as a Plan

19   document because § 1102(b) does not require a Plan's written instrument to include a claims

20   payment method.  Moreover, under the Plan, the University of San Francisco—not an insurance

21   company or health maintenance organization—is responsible for processing and paying claims for

22   self-funded programs such as Plaintiff's.  (Dkt. No. 22-2 at 5-6 ("For benefit programs which are

23   fully insured, benefits are insured under a group contract entered into between the Company and

24   insurance companies or HMO. . . . For benefit programs which are self-funded, the Company is

25   responsible for processing and paying appropriate claims."), 19 ("**Anthem Blue Cross** Self-

26   Funded").)  So, the Administrative Services Agreement's claims payment method does not

27   provide information as to where Plaintiff stands with respect to the Plan.

28        Additionally, the Administrative Services Agreement's amendment provision is already

United States District Court
Northern District of California

8

encompassed by—and explained more succinctly in—the Master Document's analog: "The Plan and any benefit program under the Plan may be amended or terminated at any time, in the sole discretion of the Company as Plan sponsor, by a written instrument signed by an authorized individual." (Dkt. No. 22-2 at 13.) The Administrative Service Agreement's supplemental amendment information detailing how Anthem and the University of San Francisco may propose and implement changes to the Benefit Booklet is therefore unrelated to where Plaintiff stands with respect to the Plan.

The Administrative Services Agreement's claims payment and amendment provisions do not "set[] out rules under which beneficiaries will be entitled to care," *Pegram*, 530 U.S. at 223, or provide information as to where Plaintiff stands with respect to the Plan. *Becker*, 777 F.3d at 1039. Accordingly, Defendant fails to establish the Administrative Services Agreement is part of the Plan's written instrument.

### ii. Incorporation

Next, Defendant argues the Administrative Services Agreement is incorporated into the Master Document. "A contract may incorporate documents and terms by reference." *In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019) (citing *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997)). For the Administrative Services Agreement to be validly incorporated into the Master Document, the reference to the Administrative Services Agreement in the Master Document must be clear and unequivocal, the reference must be called to the attention of and consented to by Plaintiff, and the terms of the incorporated document must be known or easily available to the contracting parties. *Id*.

"To properly incorporate another document, the document need not recite that it incorporates another document, so long as it guides the reader to the incorporated document." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 610 (9th Cir. 2020).

The Master Document states:

> **Benefits hereunder may be provided pursuant to an insurance contract or pursuant to a governing document adopted by the Company. If so, these contracts are made part of this Plan document**, and the contracts and Plan document should be construed as consistent, if possible. If the terms of this Plan document conflict

United States District Court
Northern District of California

1

2

3

> with the terms of such insurance contract or other governing document, then the terms of the insurance contract or governing document will control, with the exception of defining eligible employees and dependents, which is determined by the Company[], unless otherwise required by law.

4   (Dkt. No. 22-2 at 6-7 (emphasis added).)  The Master Document references insurance contracts

5   under which benefits may be provided and explains such contracts are made part of the Plan

6   document.  However, the Master Document fails to clearly and unequivocally incorporate by

7   reference the Administrative Services Agreement because "[t]he reference [does] not identify any

8   document or source by title.  The reference [is] amorphous, and [does] not guide the reader to the

9   incorporated document."  *Cariaga v. Loc. No. 1184 Laborers Int'l Union of N. Am.*, 154 F.3d

10  1072, 1074-75 (9th Cir. 1998); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at

11  610 (ruling, as a matter of law, a document is not properly incorporated where the reference fails

12  to name the document by title, and thus fails to guide the reader to the document).  So, Defendant

13  fails to establish the Administrative Services Agreement is incorporated into the Master Document

14  as a matter of law.

15                                              * * *

16          Because Defendant fails to establish the Administrative Services Agreement provides

17  information as to where Plaintiff stands with respect to the Plan or is properly incorporated by

18  reference into the Master Document, Defendant fails to show the Administrative Services

19  Agreement is a Plan document capable of conferring discretionary authority on Anthem.  *CIGNA*

20  *Corp.*, 563 U.S. at 437-38.

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

United States District Court
Northern District of California

1

## CONCLUSION

For the reasons stated above, Defendant fails to establish the Plan unambiguously delegates discretionary authority on Anthem to determine eligibility for benefits or construe Plan terms.  So, Defendant fails to demonstrate departure from the default *de novo* standard of review is justified for Anthem's denials of Plaintiff's Innercept claims after March 20, 2021.  *Abatie*, 458 F.3d at 963-65.

**IT IS SO ORDERED.**

Dated: April 11, 2024

JACQUELINE SCOTT CORLEY
United States District Judge